THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
WAYNE PIERSON, Defendant-Appellant.

First District (4th Division)   No. 86—2880

Opinion filed February 18, 1988.—Rehearing denied March 17, 1988.

Frederick F. Cohn, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., and Lynda A. Peters, Assistant State's Attorneys, and Jean T. McGuire Quinn, Special Assistant State's Attorney, of counsel), for the People.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

Following a jury trial the defendant, Wayne Pierson, was convicted of murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1) and sentenced to a term of 28 years. He contends on appeal that the trial court erred in denying a motion to suppress his statement and that he was denied a fair trial as the result of certain inflammatory and improper remarks by the prosecutor during closing arguments. The defendant further contends that, if his statement is suppressed, the remaining evidence is insufficient to sustain his conviction for murder.

This cause involves the fatal shooting of Michael Samawi, a store owner, on January 5, 1985. Several days later, the 16-year-old defendant made a statement to the police implicating himself as the offender. At a hearing on the defendant's motion to suppress this statement, the State presented testimony that the police officers investigating the crime were told by the victim's nephew that he had received an anonymous phone call stating that three individuals, the defendant, Alfie Jones and Antoine Hudson, had knowledge of the shooting. Based on this tip the officers went to the defendant's home and obtained permission from the defendant's grandmother to speak with him about the shooting. After a brief conversation, the defendant voluntarily accompanied the officers as they picked up Alfie Jones and drove to the police station. At the station the defendant remained alone in an interview room while the police questioned Alfie Jones. According to the officers' testimony the defendant was not under arrest and was at all times free to leave.

Alfie Jones told the officers that he witnessed the shooting and gave a detailed statement concerning the incident. Jones stated that on January 4, 1985, he, the defendant and Antoine Hudson were at Hudson's house when the defendant produced a .32-caliber revolver which he claimed he had received from William Connor. On the following day they met again at Hudson's house and discussed "possible places that could be stuck up." At this time, the defendant produced

the gun and said that it was fully loaded. He said that he was going to rob someone, but Jones and Hudson wanted no part of this plan. At approximately 6 p.m., the defendant left Hudson's house and walked toward 5700 South Morgan. Jones and Hudson, knowing what the defendant had planned, positioned themselves on the north side of 57th Street where they had an unobstructed view of the store located at 5700 South Morgan. They watched as the defendant approached an Arab and a black man who were locking the security gates on the outside of the store. The defendant held the gun in his right hand, approached the Arab and said something. The Arab turned and took a step toward the defendant at which time the defendant fired two shots at him. The Arab moved closer, and the defendant fired two more shots at him. He grabbed his chest and the black man who was with him ran to call the police. The defendant ran east on 57th Street. As he passed Jones and Hudson, he removed a brown ski mask with yellow trim that he had been wearing. Jones had given him the ski mask earlier that day. Meanwhile, the Arab had managed to seat himself in a car awaiting arrival of the police. On the following day, the defendant showed Jones and Hudson four expended cartridge casings from the gun he had used in the shooting.

After hearing Jones' statement, the officers told the defendant that he was under arrest and gave him the *Miranda* warnings. This occurred approximately two hours after he was brought to the station. After being confronted with Jones' statement, the defendant made the statement which formed the substance of his motion to suppress. According to the officers, no promises were made to the defendant and he was not threatened in any way. They did tell him that he could be prosecuted as an adult.

The testimony presented by the defense at the suppression hearing differed markedly from the State's version regarding what transpired at the defendant's house during his initial contact with the police. According to the defendant's grandmother and other family members, the officers stated that they wanted to talk to the defendant about "gang problems" and would not remove him from the premises. The grandmother told the officers that they could talk to the defendant in the living room. The defendant testified that when they entered the living room, the officers threw him his coat and told him to come down to their car to talk. He had never been arrested before and believed that he was required to go with them. They then locked him in the car and drove to Alfie Jones' house. One officer remained in the car with him as the others went in for Jones, and he did not feel that he was free to leave. The defendant stated that when

they reached the police station, he was locked in a room on the third floor and given the *Miranda* warnings. He did not understand all that was said concerning his rights. One of the officers told him that if he made a statement, the judge would probably give him probation because he was a juvenile with no prior record.

At the conclusion of the hearing, the trial court found that the defendant was unlawfully arrested at his home and did not voluntarily accompany the officers to the police station. The court made a specific finding that it believed the testimony of the defense witnesses as to what transpired at the defendant's home and that it rejected the testimony of the police officers on that point. However, the court found that the statement of Alfie Jones supplied the officers with probable cause to arrest the defendant and served as an intervening factor which sufficiently attenuated the taint of the initial illegal arrest. The court therefore denied the defendant's motion to suppress the statement which he made after having been confronted with Alfie Jones' statement.

At trial, Robert Phillips testified that he worked at Michael Samawi's store at 5700 South Morgan in Chicago. At 6 p.m. on January 5, 1985, he and Samawi were locking the security gates when they were approached by a black man wearing a ski mask. The man pointed a gun at them and announced a "hold up." As they turned toward the man, he fired two shots at Samawi and one shot at Phillips, then fled. Phillips helped Samawi, who had been wounded, into a car then called the police. It was stipulated that Samawi died of multiple gunshot wounds in his chest. Phillips testified that he gave a statement to the police shortly after the shooting occurred. The State also introduced into evidence the contents of the defendant's statement, in which the defendant said that he was only trying to scare Samawi and began to shoot because Samawi tried to grab the gun and also appeared to be reaching for a gun of his own.

The facts relating to the allegedly improper remarks made by the prosecutor will be detailed later in connection with our discussion of that issue.

The defendant first contends that the trial court erred in denying his motion to suppress. He maintains that the statement of Alfie Jones was insufficient to provide probable cause for his arrest because Jones' reliability as an informant had not been established. He further maintains that even if Jones' statement did provide probable cause, it did not constitute a sufficient intervening factor to attenuate the taint of the initial unlawful arrest. The State maintains that the defendant voluntarily accompanied the police and was not arrested until after

Alfie Jones' statement provided the necessary probable cause. We will not consider this argument because we agree with the State's alternate contention that the taint from the initial arrest was sufficiently attenuated.

■■ ■ Probable cause to arrest exists when the facts and circumstances known to the police would justify the belief in a person of reasonable caution that the person to be arrested has committed a crime. (*People v. Lekas* (1987), 155 Ill. App. 3d 391, 410, 508 N.E.2d 221.) The probability of criminal activity, and not proof beyond a reasonable doubt, is the standard for assessing probable cause. (*People v. Cruz* (1983), 119 Ill. App. 3d 868, 880, 457 N.E.2d 1281.) Nevertheless, the information relied upon to establish probable cause must be supported by some indicia of reliability. (*People v. James* (1987), 118 Ill. 2d 214, 222, 514 N.E.2d 998.) In *Aguilar v. Texas* (1987), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, the United States Supreme Court established a two-prong test to be used in determining whether information supplied by an informant is sufficient to establish probable cause. First, the informant must state his basis of knowledge; second, there must be some circumstances supporting the conclusion that the informant is reliable. In *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584, the Court indicated that the reliability prong could be supported "by detailing reasons in support of the conclusions that the informant is reliable and by independent corroboration of the information given by the informant." *People v. James* (1987), 118 Ill. 2d 214, 223, 514 N.E.2d 998, 1002.

The Court subsequently abandoned the two-prong *Aguilar-Spinelli* test in *Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317, and adopted in its place a "totality of the circumstances" approach to determining probable cause. Under this approach, the existence of probable cause is not governed by technical legal rules but by common-sense considerations which are factual and practical. (*People v. Tisler* (1984), 103 Ill. 2d 226, 236, 469 N.E.2d 147.) The reliability and basis of knowledge of an informant are not treated as independent requirements but as closely intertwined factors in resolving the practical question of whether probable cause exists. (*People v. Mitchell* (1984), 123 Ill. App. 3d 868, 873, 463 N.E.2d 864.) Along these lines, it has been suggested that "where there is some doubt as to the informant's motives, his explicit and detailed description of the crime, along with a statement that he was an eyewitness thereto, entitles his tip to greater weight than it might otherwise receive." *People v. Mitchell* (1984), 123 Ill. App. 3d 868, 873, 463 N.E.2d 864, 869; see also *People v. Cruz* (1983), 119 Ill. App. 3d 868,

457 N.E.2d 1281.

In the case at bar, the police were told by the victim's nephew that he had received an anonymous telephone tip that the defendant, Alfie Jones and Antoine Hudson had knowledge of the shooting. When they questioned Alfie Jones, he confirmed that he did have such knowledge and that he was in fact an eyewitness to the crime. He then gave a very detailed statement to the police which included identification of the victim, the time and location of the incident, the type of weapon used and a description of the ski mask worn by the defendant. Robert Phillips, who gave a statement to the police shortly after the shooting, testified at trial that the offender was wearing a ski mask. One of the officers who testified at the suppression hearing stated that Jones' statement was then compared with the information contained in the police reports. When the information given by Jones matched what the officers already knew, they placed the defendant under arrest. In our view, the detailed eyewitness description of the incident provided by Alfie Jones, which corroborated the information already known to the police, provided sufficient probable cause to arrest the defendant at that time.

■ The defendant next maintains that, even if Jones' statement did provide probable cause for his arrest, it was not sufficient, standing alone, to dissipate the taint of the initial illegal arrest.

Where the State seeks to introduce a statement made by the defendant after an illegal arrest, it must establish that the statement was an exercise of the defendant's free will, independent of any taint of the illegal arrest. (See *Wong Sun v. United States* (1963), 371 U.S. 471, 486, 9 L. Ed. 2d 441, 454, 83 S. Ct. 407, 416.) Four factors have been identified as relevant in determining whether the taint from the primary illegality has been attenuated: (1) the temporal proximity of the illegality to the evidence obtained; (2) the presence of intervening circumstances; (3) the purpose and flagrancy of the police misconduct; and (4) the presence or absence of *Miranda* warnings. (*People v. Dortch* (1982), 109 Ill. App. 3d 761, 765, 441 N.E.2d 100, 104.) These factors were derived from the United States Supreme Court decision in *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254.

The State concedes that the two-hour lapse between the defendant's illegal arrest and his statement to police was insufficient to purge the taint of the illegal arrest. The State argues, however, that the defendant was given the *Miranda* warnings and that the initial arrest was not accomplished by flagrant misconduct. Also, and most important, the State maintains that the probable cause to arrest provided by Alfie Jones' statement constituted an intervening circum-

stance which served to attenuate the taint of the illegal arrest.

The defendant, citing *United States v. Cherry* (5th Cir. 1985), 759 F.2d 1196, *cert. denied* (1987), 479 U.S. 1056, 93 L. Ed. 2d 983, 107 S. Ct. 932, contends that intervening probable cause, by itself, is insufficient to purge the taint of an illegal arrest. While the Court in *Cherry* did hold that intervening probable cause "cannot assure in every case that the Fourth Amendment violation has not been unduly exploited," it went on to state that "the intervening acquisition of probable cause is an important attenuating factor in the analysis." (759 F.2d at 1212.) As stated by this court in *People v. Lekas* (1987), 155 Ill. App. 3d 391, 414, 508 N.E.2d 221, 237, where the police acquire probable cause after an arrest but before a statement is given, "one could question the wisdom of requiring police to go through the formality of releasing [the defendant], only to rearrest him outside the jailhouse door."

■ It is well established that the decision of the trial court on a motion to suppress will not be reversed unless it is manifestly erroneous. (*People v. Lekas* (1987), 155 Ill. App. 3d 391, 415, 508 N.E.2d 221.) Our analysis of the situation in the case at bar leads us to conclude that the trial court's finding that the defendant's statement was sufficiently attenuated from his arrest was not manifestly erroneous. As we have stated, the intervening acquisition of probable cause is an important factor in the attenuation analysis. Also, in our view, although the police initially arrested the defendant without probable cause, the police conduct in effectuating the arrest was not particularly flagrant. This was not, as the defendant suggests, an "arrest sweep" conducted by the police in the hope that something might turn up. Rather, the officers were acting on an anonymous tip that three named individuals had knowledge of the shooting. Although the trial court found that the police used deception in gaining initial access to the defendant, the deception apparently ended at the defendant's house. While we do not in any way condone such police tactics, we do not believe that the misconduct was determinative under the attenuation analysis.

As stated earlier, one of the points raised by the defendant in this appeal is that, absent evidence of the defendant's statement, the remaining evidence is insufficient to support his conviction for murder. Because we have determined that the statement was admissible, it is unnecessary for us to consider this issue.

The defendant next contends that certain inflammatory and improper remarks by the prosecutor during closing argument served to deny him a fair trial.

■ The first remark was a reference to the victim's family. After commenting that the victim was a hardworking businessman, the prosecutor stated that "Michael Samawi will never see his son play high school football or graduate. He will never see his daughter graduate." Generally, remarks about the victim's family which are designed to arouse the sympathy and passions of the jury are improper. (*People v. Beringer* (1987), 151 Ill. App. 3d 558, 563, 503 N.E.2d 778.) However, the supreme court has recognized that "[c]ommon sense tells us that murder victims do not live in a vacuum and that, in most cases, they leave behind family members." (*People v. Free* (1983), 94 Ill. 2d 378, 415, 447 N.E.2d 218, *cert. denied* (1983), 464 U.S. 865, 78 L. Ed. 2d 175, 104 S. Ct. 200.) Considering the prosecutor's remark in the context of the entire case, we believe that it was at most harmless error. Along the same line, the prosecutor later stated that "I am Michael Samawi for purposes of this argument. That's my widow out there who grieves every day." This comment was clearly invited by defense counsel's earlier statement that "for the purpose of this trial I am Wayne Pierson and I speak for Wayne Pierson. And Wayne Pierson is saying to you through me or by me that he is not guilty of murder." Where comments are invited by the defendant's argument, they cannot be urged as error on appeal. (*People v. Collins* (1985), 106 Ill. 2d 237, 277, 478 N.E.2d 267, *cert. denied* (1985), 474 U.S. 935, 88 L. Ed. 2d 274, 106 S. Ct. 267.) In any event, we do not find the prosecutor's comment prejudicial.

■ The defendant next argues that the prosecutor made a number of comments which disparaged defense counsel and accused him of lying. At one point, the prosecutor stated that "Mrs. Samawi according to counsel is unimportant in this case. *** That's the first half truth, the first lie that you are being given." The court sustained an objection to this comment and informed the jury that "[n]either side when they argue their point of view is deemed to be lying." We believe that the trial court's actions served to cure any prejudice which might otherwise have resulted. (*People v. Carlson* (1980), 79 Ill. 2d 564, 577, 404 N.E.2d 233.) The prosecutor subsequently stated that defense counsel "has been attempting to keep the whole truth from you" and "has in fact not presented an entire picture of what happened that night." Again, the trial court instructed the jury to disregard the remark and admonished counsel from both sides not to make personal accusations against one another. Under these circumstances, we do not believe that these remarks warrant a new trial.

■ During rebuttal argument, the prosecutor made a remark which the defendant claims had the effect of disparaging the pre-

sumption of innocence. Specifically, the prosecutor stated that the laws of this country "are designed to protect people who are falsely accused of crime." After a defense objection, the prosecutor corrected himself and informed the jury that the laws are designed "to protect not only innocent people accused of crimes, any person accused of a crime." Because the misstatement was corrected, no error occurred. We conclude that the remarks made by the prosecutor, considered either individually or cumulatively, did not serve to deny the defendant a fair trial.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

JOHNSON and McMORROW, JJ., concur.