**Wayne PIERSON, Petitioner–Appellant,**

**v.**

**Michael O'LEARY, Warden, and Neil F. Hartigan, Illinois Attorney General, Respondents–Appellees.**

**No. 90–2759.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 1, 1991.

Decided April 6, 1992.

Frederick F. Cohn (argued), Chicago, Ill., for petitioner-appellant.

David E. Bindi, Marcia L. Friedl (argued), Asst. Attys. Gen., Office of the Atty. Gen., Terrence M. Madsen, Asst. Atty. Gen., Kathryn M. Frost, Office of the Atty. Gen., Criminal Appeals Div., Chicago, Ill., for respondents-appellees.

Before CUDAHY and FLAUM, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

Following a jury trial in an Illinois court, Wayne Pierson was convicted of murder pursuant to Ill.Rev.Stat. ch. 38, para. 9–1 (1985) and sentenced to 28 years in prison. Pierson appealed his conviction to the Appellate Court of Illinois, First District, Fourth Division, arguing both that the trial court improperly denied his motion to sup-

press and that he was denied a fair trial due to prosecutorial misconduct. The Appellate Court affirmed the judgment. *People v. Pierson*, 166 Ill.App.3d 558, 117 Ill. Dec. 18, 519 N.E.2d 1185, *cert. denied*, 488 U.S. 925, 109 S.Ct. 307, 102 L.Ed.2d 326 (1988). Pierson filed a petition for leave to appeal with the Illinois Supreme Court and a petition for writ of certiorari with the United States Supreme Court; both petitions were denied. He then filed a petition for writ of habeas corpus with the district court which was also denied.

District Judge Hart held that habeas corpus relief was not available on Pierson's fourth amendment claims pursuant to *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), because the state courts had provided him with a full and fair opportunity to litigate those claims. Judge Hart further held that Pierson's fifth amendment claim had been waived for failure to give the state courts a fair opportunity to consider the claim. With regard to his prosecutorial misconduct claim, the district judge found that the prosecutorial comments did not misstate or manipulate the evidence and that curative instructions had been given. The district court, then, determined that the comments were not so prejudicial as to infect the entire trial and deny due process. *United States ex rel. Pierson v. O'Leary*, No. 89 C 5499, 1990 WL 114534, 1990 U.S.Dist.Lexis 9401 (N.D.Ill. July 25, 1990). Pierson now appeals the denial of the petition for writ of habeas corpus.

## BACKGROUND

Michael Samawi owned a grocery store at the corner of 57th Street and South Morgan Avenue in Chicago. On the evening of January 5, 1985, Mr. Samawi and Robert Phillips, an employee, were locking the burglar gates on the store when a masked gunman came up behind them and announced a "hold up." The two men turned to face the gunman, and the gunman fired three shots, fatally wounding Mr. Samawi. The gunman then fled.

Acting on an anonymous tip, two police detectives went to Wayne Pierson's home to question him. The detectives told his grandmother that they wanted to talk to Wayne about gangs. The detectives said that they were taking Wayne downstairs to the vestibule to talk to him and that they would bring him right back. A detective directed Wayne to get into one of the waiting police cars. The detectives then drove to Alfie Jones' house and picked him up in the other police car. Pierson and Jones were taken to the police station where Pierson was taken to an interview room and left alone for one hour. During that hour Jones told the detectives that Pierson was the gunman. When the detectives returned, Pierson was given *Miranda* warnings, and a detective allegedly told him that if he confessed the judge would probably go easy on him and give him probation because he was a juvenile and a first-time offender. Pierson then gave a statement in which he admitted to shooting Mr. Samawi. He said he originally intended to scare Samawi but became fearful and shot when Samawi tried to grab the gun and looked as if he was pulling out a weapon.

## I.

■ Pierson argues that the prosecutors made several statements that constituted misconduct, deprived him of a fair trial and, thus, violated his right to due process. In determining whether prosecutorial statements so infected a trial as to make it fundamentally unfair and deny the defendant his due process rights, we must determine whether the statements likely changed the outcome of the trial. *United States ex rel. Shaw v. DeRobertis*, 755 F.2d 1279, 1282 (7th Cir.1985). We do not consider the statements in isolation but in the context of the entire trial. *Id.*

■ Pierson asserts that the prosecutor improperly attacked the truthfulness of his attorney. In closing argument, the prosecutor stated, "That is the first half truth, the first lie that you are being given. We are here to tell you the whole story about what happened." The defense objected, and the objection was sustained. The judge then instructed the jury,

In reference to counsel's remarks as lying, I don't believe however that Mr. Vroustouris intended to say to you that Mr. Cohn lied. I am going to instruct the jury that counsel for both sides are entitled to argue the facts as they see them based on their theory of the case. Counsel are also entitled to argue reasonable inferences. Quite obviously they have a different point of view. Neither side when they argue their point of view is deemed to be lying. They are merely stating their point of view as they believe it is, and they are urging you to adopt that point of view. (Tr. at 463.)

The prosecutor later stated, "Counsel has been trying to keep the whole truth from you ... And has in fact not presented an entire picture of what happened that night." Defense counsel again objected, and the trial judge advised,

Counsel for both sides are directed they should not be making personal accusations against one another. The jury will disregard that statement. Counsel for both the State and the defendant are however entitled to put forth their theory of the case, and the facts and reasonable inferences to be drawn therefrom. (Tr. at 467–68.)

The prosecutor's personal attacks on the credibility of defense counsel were clearly improper, but it is not likely that they changed the outcome of Pierson's case. To determine the prejudicial effect of the statements, we must look at the contexts in which they were made and determine whether the statements related to a disputed issue of fact. If the prosecutor attacked defense counsel's truthfulness only as to an undisputed issue, then it is unlikely that the jury's decision was affected.

Since Pierson admitted to shooting Mr. Samawi, the only real issue for the jury was Pierson's mental state at the time of the shooting. The jury had to decide whether Pierson killed Mr. Samawi while attempting a forcible felony, armed robbery, or intended to kill or cause great bodily harm to Mr. Samawi or knew that such result was probable, such that he would be guilty of murder. Ill.Rev.Stat. ch. 38, para. 9–1 (1985). Alternatively, the jury could determine that he possessed an intent to kill but also had a belief that his actions were justified under the circumstances, such that he should be convicted of voluntary manslaughter rather than murder, Ill.Rev.Stat. ch. 38, para. 9–2 (1985), or they could determine that he lacked an intent to kill but his actions were reckless and likely to cause death or great bodily harm, such that he should be convicted of involuntary manslaughter. Ill. Rev.Stat. ch. 38, para. 9–3 (1985).

The prosecutor's first statement was made in the context of discussing defense counsel's assertion that the testimony of Mrs. Samawi was unimportant to the disposition of the case. Mrs. Samawi's testimony did not relate to Pierson's mental state, the disputed issue in the case. The second statement was, likewise, made in the context of discussing an undisputed issue of fact. The prosecutor was discussing the defense's assertion that the firearm examiner's testimony was unimportant because the defense would have stipulated to and had admitted that Pierson shot Mr. Samawi. The medical examiner's testimony and the defense's view of that testimony, generally, related to identification of the murder weapon, an undisputed issue, rather than Pierson's mental state.[1] Because neither of the prosecutor's attacks on the truthfulness of defense counsel related directly to a disputed issue of fact, it is not likely that the statements affected the jury's decision.

In addition, the judge's instructions to the jury dissipated any possible prejudice from the prosecutor's attacks. The judge not only instructed the jury to disregard the prosecutor's comments but explained to the jury that each side was entitled to argue its theory of the case. The judge explained that, although the defendant's view of the evidence could be expected to differ from the state's view, neither side was considered to be lying. In light of these instructions and the unimportant nature of the statements, we hold that the

1. The firearm examiner briefly testified to the trigger pressure required to fire the pistol.

statements did not so infect the trial with prejudice as to deny Pierson his due process rights.

Next, Pierson argues that the prosecutor called into question Pierson's right to the presumption of innocence and to have the state prove him guilty beyond a reasonable doubt. The prosecutor stated that the reasonable doubt standard was "designed to protect people who are falsely accused of crimes. That's the whole intent of those laws." (Tr. at 467.) After objection, the prosecutor restated his comment, "The laws ... are the same laws that are designed to protect not only innocent people accused of crimes, any person accused of a crime. Those laws are also designed to protect each and everyone of us as citizens." His first statement was not inaccurate in terms of the ultimate purpose of these rules. We apply them to every accused person until found guilty in accordance with them. We do so, however, for the ultimate purpose of protecting the innocent. *In re Winship*, 397 U.S. 358, 372, 90 S.Ct. 1068, 1076, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring). *Hankerson v. North Carolina*, 432 U.S. 233, 242, 97 S.Ct. 2339, 2344, 53 L.Ed.2d 306 (1977).

Pierson really is arguing that the prosecutor's first remark was intended to suggest that Pierson was not entitled to the protection of these rules. The prosecutor did not say that and his restatement acknowledged Pierson's entitlement. The remarks could not have affected the verdict.

■ Finally, Pierson argues that the prosecutor improperly presented irrelevant evidence concerning the victim's hard-working character and the impact of the crime on the victim's family. "The admissibility of evidence in a state criminal trial, however, is generally a matter of state law." *United States ex rel. Lee v. Flannigan*, 884 F.2d 945, 953 (7th Cir.1989), *cert. denied*, — U.S. ——, 110 S.Ct. 3277, 111 L.Ed.2d 786 (1990). On habeas review of a state conviction, we consider only whether the admission of the evidence caused a violation of the defendant's federal constitutional rights. *Id.; Woodruff v. Lane*, 818 F.2d 1369, 1373 (7th Cir.1987); *Cramer*

*v. Fahner*, 683 F.2d 1376, 1384–85 (7th Cir.), *cert. denied*, 459 U.S. 1016, 103 S.Ct. 376, 74 L.Ed.2d 509 (1982). Pierson would have been denied a fundamentally fair trial only if the prejudicial effect of the family impact and victim character evidence greatly outweighed its probative value such that its admission likely changed the outcome of the trial. *Lee*, 884 F.2d at 953 and *Shaw*, 755 F.2d at 1282.

■ Such evidence does not occur to us to have any probative value as to any element of the murder charge, and the conduct of the prosecutors in offering this irrelevant evidence was clearly improper. However, considering the challenged evidence in the context of the trial as a whole, we conclude that its prejudicial effect was minimal and are not convinced that it likely changed the outcome of the trial. The victim's wife, Mrs. Samawi, was called by the prosecution to identify People's Exhibit Number 1 as a photograph of her late husband. As background information, she testified that she and her husband were married in Jordan and had two children, ages 14 and 11. Mrs. Samawi testified that her husband came to the United States in 1974 and that she and their two children joined him two years later. She further testified that her husband had worked for relatives for several years until he bought his own store, a liquor store, in 1980 or 1981. Mrs. Samawi told of his buying another store, a grocery store, in 1983. She then testified that she saw her husband in the morning on the day of the shooting before he left for work and that he was healthy. She talked to him at 10:00 AM on the telephone for the last time and did not see him again until he was dead.

Mrs. Samawi was tearful throughout her testimony, but she did not directly testify to her husband's character or to the effect of his death upon her and the children. Thus, the prejudicial effect of the testimony was lessened. Of course, the inferences that the victim was hard-working and that his family grieved his loss could be drawn from her testimony and would produce a certain amount of sympathy or anger in the jury. Given the obvious lack of probative

value to her testimony, there was little reason for the prosecution to call Mrs. Samawi as a witness, except as an appeal to the jury's emotions. The jury, however, is not likely to be surprised or inflamed by such testimony and would likely assume that a murder would have a profound effect upon the victim's family even without such testimony.

Pierson also objects to the following statements made by the prosecutors in their closing argument. The prosecutors described Mrs. Samawi's testimony as follows:

> And the next thing she knew she was at the hospital. Never had a chance to have another word. He had passed. And let's not forget, ladies and gentlemen, the victim himself Mr. Michael Samawi. Mr. Michael Samawi was fifty-eight years old at the time of his death, at the time of his killing. He was a businessman. He was hard working, supporting his family. He was shot down on the streets of Chicago in a senseless murder. Mr. Michael Samawi will never see his son play high school football or graduate. He will never see his daughter graduate. (Tr. at 438.)

. . . . .

> I am Michael Samawi for purposes of this argument. That's my widow out there who grieves every day. And I am asking you for justice in this case. I am asking you to find defendant, Wayne Pierson, guilty of murder. (Tr. at 478.)

The prejudicial effect of these statements was likely greater than that of Mrs. Samawi's testimony itself because the prosecutors dramatically pointed out the inferences that could be drawn from her testimony. The issue on habeas, however, is whether these statements combined with Mrs. Samawi's testimony created sufficient prejudice to cause the jury to change its decision as to Pierson's mental state at the time of the crime, thus denying him due process.

There was strong evidence in this case to support the jury's determination that Pierson committed murder. Under Illinois law to convict Pierson of murder required that the jury find either that Pierson had intended to kill Mr. Samawi or do great bodily harm to him or knew that his acts would cause death or a strong probability of death or great bodily harm or that Pierson killed Mr. Samawi while attempting a forcible felony. Ill.Rev.Stat. ch. 38, para. 9–1 (1985). In order to convict Pierson of murder, the jury was also required to determine that Pierson did not believe the circumstances justified his use of force. Ill. Rev.Stat. ch. 38, para. 9–2(b) (1985).

Robert Phillips, an eyewitness, testified that Pierson said "hold up" and that he and Mr. Samawi turned around to face Pierson who was wearing a ski mask. Mr. Phillips testified that neither he nor Mr. Samawi reached or stepped toward Pierson, but Pierson shot Mr. Samawi twice in the chest immediately after they turned around. (Tr. at 279–94.) The firearm examiner testified that the pistol used by Pierson required from 5½ to 7½ pounds of trigger pressure to cause it to discharge and would not be considered a "hair trigger." (Tr. at 356.) The defendant's statement to the police was also admitted into evidence and read to the jury. Pierson stated that his friends wanted to rob Mr. Samawi but that he agreed only to attempt to scare him. Pierson further stated that Mr. Samawi had cheated him out of some money. (Tr. at 379, 382–83.)

Mrs. Samawi's testimony filled only seven pages out of the approximately one hundred pages of testimony in this case. The prosecutors' remarks, set out above, constituted one and a half pages out of a twenty-seven page closing argument. Considering the relative predominance of other evidence tending to prove murder, we conclude that the victim impact evidence did not likely change the outcome in this case. *See, e.g., Johnson v. Wainwright,* 778 F.2d 623, 630–31 (11th Cir.1985) (holding that improper remarks which were relatively brief when viewed in context of entire sentencing proceeding did not render the proceeding fundamentally unfair), *reaff'd by Johnson v. Dugger,* 932 F.2d 1360, 1363–64 (11th Cir. 1991) (considering effect of *Booth v. Maryland*). Additionally, we note that the

judge instructed the jury, "Neither sympathy nor prejudice should influence you." (Tr. at 479.)

Every criminal case involving a victim will create some sympathy. In this case, there was substantial evidence strongly tending to prove murder and the victim impact evidence constituted a relatively small part of the total evidence. Thus, we conclude that the sympathy-generating evidence did not likely sway the jury from a proper analysis of the facts.

Pierson argues that under *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), the admission of victim impact evidence is improper. In *Booth*, the Supreme Court held that "the Eighth Amendment prohibit[ed] a capital sentencing jury from considering victim impact evidence." *Id.* at 501–02, 107 S.Ct. at 2532. The Supreme Court's reasoning in *Booth* emphasized the unique concerns involved in a capital punishment decision. "While the full range of foreseeable consequences of a defendant's actions may be relevant in other criminal and civil contexts, we cannot agree that it is relevant in the unique circumstances of a capital sentencing hearing." *Booth*, 482 U.S. at 504, 107 S.Ct. at 2533. *Booth* was expressly overruled by *Payne v. Tennessee*, — U.S. —, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991).

## II.

■ Pierson argues that his statement to police must be suppressed as the fruit of an illegal seizure. We must first determine whether Pierson's fourth amendment claim falls within the substantive scope of the habeas corpus writ. "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone*, 428 U.S. at 482, 96 S.Ct. at 3046.[2] A habeas corpus petitioner has received an

opportunity for full and fair litigation of his or her fourth amendment claim when (1) the petitioner has clearly informed the state court of the factual basis for that claim and has argued that those facts constitute a violation of the petitioner's fourth amendment rights and (2) the state court has carefully and thoroughly analyzed the facts and applied the proper constitutional case law to the facts. *See, Dortch v. O'Leary*, 863 F.2d 1337, 1342 (7th Cir. 1988), *cert. denied*, 490 U.S. 1049, 109 S.Ct. 1961, 104 L.Ed.2d 429 (1989).

■ Pierson argues that he was not provided an opportunity for full and fair litigation of his fourth amendment claim because the state courts did not apply the proper constitutional case law. In determining whether the taint of an unlawful seizure has sufficiently dissipated so as to allow admission of a subsequently acquired statement, a court must consider four factors: (1) the presence of Miranda warnings, (2) the temporal proximity of the arrest to the confession, (3) the presence of intervening circumstances, and (4) the purpose and flagrancy of the official misconduct. *Brown v. Illinois*, 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975). The state appellate court listed the foregoing factors as the appropriate standard and cited *Brown. Pierson*, 117 Ill. Dec. at 22, 519 N.E.2d at 1189. The state court then proceeded to evaluate the factual support for each of the four factors. *Id.* 117 Ill.Dec. at 22–23, 519 N.E.2d at 1189–90.

Pierson argues that the state court ignored case law relevant to the fourth factor and, thus, applied an incorrect standard. Pierson argues that the state court should have applied *Taylor v. Alabama*, 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982), in determining the flagrancy of the officers' misconduct. In *Taylor* (a direct appeal from the Supreme Court of Alabama), the U.S. Supreme Court did not create an independent standard for finding flagrancy under the fourth *Brown* factor;

---

2. Pierson argues that *Stone* should be overturned. Regardless of the petitioner's or this panel's views as to the wisdom of the *Stone*

decision, we are constrained to follow its mandate.

the Court merely applied the *Brown* standard to the facts in that case. *Id.* 457 U.S. at 691–93, 102 S.Ct. at 2667–68. In fact, the Court stated that the *Taylor* case was "a virtual replica of ... *Brown.*" *Id.* 457 U.S. at 690, 102 S.Ct. at 2667. Thus, in applying the *Brown* standard to the facts of Pierson's case the state court applied the correct constitutional standard.

 The state appellate court carefully and thoroughly evaluated the flagrancy of the officers' conduct in Pierson's case. The state court stated,

> Also, in our view, although the police initially arrested the defendant without probable cause, the police conduct in effectuating the arrest was not particularly flagrant. This was not, as the defendant suggests, an "arrest sweep" conducted by the police in the hope that something might turn up. Rather, the officers were acting on an anonymous tip that three named individuals had knowledge of the shooting. Although the trial court found that the police used deception in gaining initial access to the defendant, the deception apparently ended at the defendant's house. While we do not in any way condone such police tactics, we do not believe that the misconduct was determinative under the attenuation analysis.

*Pierson,* 117 Ill.Dec. at 23, 519 N.E.2d at 1190. Because we agree with the district court that the state court made a thorough analysis of the facts under the *Brown* standard, we hold that, pursuant to *Stone,* federal habeas corpus relief is not available. Pierson essentially argues that the merits of his fourth amendment claim were improperly decided, but we do not reach the merits of a habeas petitioner's fourth amendment claims unless the state court has not provided an opportunity for full and fair litigation of the claim.

### III.

In the district court, Pierson claimed his statement to the police was involuntary in violation of the fifth amendment because of the promises made to him. (R. at 14–16.) Judge Hart held that Pierson had waived

this claim. Pierson makes the same argument here.

"Before considering a petition for habeas corpus on its merits, a district court must make two inquiries—whether the petitioner exhausted all available state remedies and whether the petitioner raised all his claims during the course of the state proceedings." *Henderson v. Thieret,* 859 F.2d 492, 496 (7th Cir.1988), *cert. denied,* 490 U.S. 1009, 109 S.Ct. 1648, 104 L.Ed.2d 163 (1989). In Pierson's case, the state expressly conceded that the exhaustion requirement had been fulfilled (R. on Appeal at 7.), and the district court did not address the exhaustion requirement but instead relied entirely upon a finding of waiver. On this appeal, the state does not argue that Pierson failed to exhaust his state remedies. When the state has not raised the defense of nonexhaustion, we are neither required to address the exhaustion requirement nor find it waived. *See, Granberry v. Greer,* 481 U.S. 129, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987) (state failed to raise nonexhaustion defense at district court but raised the defense on appeal). Instead, this court has the discretion to consider whether "the administration of justice would be better served by insisting on exhaustion or by reaching the merits of the petition forthwith." *Id.* at 131, 107 S.Ct. at 1673. Because resolution of the exhaustion issue would not change the outcome of this case and the state expressly conceded the issue below, we will assume, for purposes of this opinion, that the petitioner has exhausted his available state remedies.

 Proceeding to the second inquiry, a habeas petitioner, to avoid waiver, must have presented his or her state claims in such a way as to fairly alert the state court to the specific constitutional grounds asserted in the habeas petition. *United States ex rel. Sullivan v. Fairman,* 731 F.2d 450, 453 (7th Cir.1984). The fundamental requirement that a petitioner first present his claims to the state court is rooted in the belief that "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an

opportunity to the state courts to correct a constitutional violation."

*United States ex rel. Spurlark v. Wolff,* 699 F.2d 354, 356 (7th Cir.1983). If the petitioner's argument to the state court did not: (1) rely on pertinent federal cases employing constitutional analysis; (2) rely on state cases applying constitutional analysis to a similar factual situation; (3) assert the claim in terms so particular as to call to mind a specific constitutional right; or (4) allege a pattern of facts that is well within the mainstream of constitutional litigation, then this court will not consider the state courts to have had a fair opportunity to consider the claim. *Sullivan,* 731 F.2d at 454. However, the presence of any one of these factors, particularly factors (1) or (2), does not automatically avoid a waiver; the court must consider the specific facts of each case. *Id.* at 454 n. 9.

 Pierson's trial court memorandum in support of his motion to suppress included the following statement regarding the voluntariness of his statement.

A final reason for granting defendant's motion is that no credible testimony rebutted defendant's testimony that the effect of *Miranda* warnings was minimized or eliminated by police trickery, *i.e.,* by telling defendant that "the judge would probably go easier on me and give me some kind of probation being a juvenile and you have not past record." (Tr. 54) Defendant's testimony is credible and he was not impeached on cross-examination. The officers' denials should fall on deaf ears in that their testimony was less than truthful concerning how defendant was taken from his house.

These deceptive police suggestions to defendant are further reason to hold that the taint caused by defendant's illegal arrest was not attenuated. Moreover, the factual context demonstrates that the statement, while not beaten from the defendant, was not constitutionally voluntary. (R. at 623.)

Pierson included essentially the same two paragraphs in his state appellate brief and his petition for leave to appeal. The only differences were the addition of citations to *People v. Overturf,* 67 Ill.App.3d 741, 24 Ill.Dec. 399, 385 N.E.2d 166 (1979), *People v. Ruegger,* 32 Ill.App.3d 765, 336 N.E.2d 50 (1975), and *People v. Jones,* 8 Ill.App.3d 849, 291 N.E.2d 305 (1972), in both his state appellate brief (R. on Appeal, at 7 App.B.) and his petition for leave to appeal (R. on Appeal, at 7 App.F.) and the addition of the words "and violated his Fifth Amendment rights" at the end of the second paragraph in his petition for leave to appeal.

In his motion to the state trial court for a new trial, Pierson asserted,

The trial court erred when it permitted the state to present in evidence statements obtained from the defendant in violation of the defendant's rights protected by the Fourth, Fifth, and Sixth Amendments ... Counsel adopts those arguments as previously made to the court at the time the motion to suppress was had. (R. at 695.)

Although neither the state trial court nor the state appellate court addressed his fifth amendment rights, Pierson did not bring the omission to either court's attention. Pierson's petition for rehearing in the state appellate court argued only that the attenuation of the fourth amendment violation and the prosecutorial misconduct claim were wrongly decided. (R. on Appeal, at 7 App.E.) In the context of his fourth amendment argument, Pierson did not even raise the involuntary nature of his statement as support for a lack of attenuation.

Pierson cited no federal fifth amendment cases to the state courts. Although none of the three state cases cited by Pierson specifically referenced the fifth amendment, all three cases discussed the voluntariness of a confession following an offer of leniency. None of the cited cases raised a fourth amendment issue; therefore, in these cases a fifth amendment basis for considering voluntariness was implied. *People v. Ruegger,* cited by petitioner, discusses *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which determined the protections required by the fifth amendment, and *Ruegger* specifically points out that the issue of voluntariness

involves the right to avoid self-incrimination. *Ruegger,* 336 N.E.2d at 53–54. Pierson's citation of state cases employing fifth amendment type analysis in his motion for a new trial and his petition for leave to appeal does not automatically avoid a waiver, however. *Sullivan,* 731 F.2d at 454 n. 9.

The state appellate court opinion in this case discusses only the attenuation of the fourth amendment violation. *Pierson,* 117 Ill.Dec. at 22–23, 519 N.E.2d at 1189–90. Obviously, the state court did not perceive Pierson to have made a separate fifth amendment challenge to the admission of the statement. The state also apparently did not discern a fifth amendment argument in the petitioner's brief, as its state appellate brief did not address this issue.

The general thrust of Pierson's argument to the state appellate court was based upon attenuation of the fourth amendment violation. The citation of three state cases on voluntariness did not change this thrust, particularly where the petitioner premised those citations with the argument that the police promises of leniency were "further reason to hold that the taint caused by defendant's illegal arrest was not attenuated." In this context, Pierson appeared to be raising the promises of leniency only as further support for his attenuation argument. In addition, the headings in a brief generally provide an outline of the argument. Pierson's headings concentrated upon the fourth amendment violation, thus reinforcing the view that the involuntariness of the confession was addressed only as a part of the attenuation argument. His first heading did mention the fifth and sixth amendments but was followed by subheadings relating only to the fourth amendment argument.

I. The admission of the defendant's statement was obtained in violation of defendant's constitutional rights as protected by the Fourth, Fifth and Sixth Amendment to the United States Constitution.

A. Defendant's Fourth Amendment constitutional rights were violated when the trial court ... admitted the defendant's statement on the theory that the taint from the defendant's illegal arrest was dissipated by the development of probable cause through the statement of another youth implicating the defendant arrested in the same "arrest sweep" as the defendant.[3] (R. on Appeal, at 7 App. B, p. 12.)

Pierson's two paragraphs concerning involuntariness followed subheading A and a further subheading (5) stating, "Under the facts of this case, there is insufficient intervening probable cause to dissipate the taint due to the defendant's original illegal arrest." (R. on Appeal, at 7 App. B, p. 24.) Presented in this context, it is not surprising that the state appellate court did not address whether taking the statement was compulsory self-incrimination and, thus, a violation of the fifth amendment; it was not fairly alerted to the claim.

In his original motion to suppress to the state trial court, Pierson stated his claim in the heading as, "Under the facts of this case, the intervening probable cause is insufficient to dissipate the taint due to the defendant's original illegal arrest." (R. at 615.) Similarly, in his petition for leave to appeal, he listed four reasons for granting leave to appeal, three challenging the appellate court's finding of attenuation and one challenging the admission of the victim impact evidence. The fifth amendment claims, again, were not raised. The headings, of course, are not dispositive of the waiver issue, but they do give some indication of what issues were raised in the state courts and whether the state courts were fairly alerted to the petitioner's claims.

Pierson's reference to the fifth amendment in his motion for new trial, in the text of his petition for leave to appeal and in one of his state appellate brief headings, standing alone, would bring to mind the fifth amendment. However, the references were buried in the context of Pierson's

---

**3.** The brief contained no subheading B under heading I. Headings II and III pertained to prosecutorial misconduct and insufficiency of the evidence claims respectively.

fourth amendment arguments. The voluntariness of the statement was relevant to the question of attenuation in determining whether the violation of the fourth amendment required suppression of the subsequently acquired statement. *Brown,* 422 U.S. at 603–04, 95 S.Ct. at 2261–62. In the context of Pierson's argument focusing on the attenuation of the fourth amendment violation, a single reference to the fifth amendment would not alert a court to inquire whether Pierson's fifth amendment rights had been violated.

We conclude, as did the district judge, that Pierson did not fairly present the substance of his fifth amendment claim to the state courts and that the claim has been waived.[4]

The district court's denial of the writ of habeas corpus is AFFIRMED.

---

**4.** Pierson has not attempted to demonstrate cause for and prejudice from the waiver, such that the waiver should be ignored. *Spurlark,* 699 F.2d at 361; *Sullivan,* 731 F.2d at 452 n. 2.