THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID WRIGHT, Defendant-Appellant.

First District (4th Division)   No. 1—97—0242

Opinion filed February 5, 1998.

Rita A. Fry, Public Defender, of Chicago (Lynn Flanagan Wilson, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and Mary P. Needham, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WOLFSON delivered the opinion of the court:

On the evening of March 25, 1994, Robert Smith and Tyrone Rockett went to a store in their neighborhood to purchase soft drinks and cookies. A short time later, in Smith's backyard, Smith and Rockett received execution-style gunshot wounds to their heads. They died almost instantly.

A jury found David Wright (David) guilty of those first degree murders. He was sentenced to life imprisonment. At trial, six different statements he made while in police custody were introduced by the State.

Everyone agrees David was arrested and brought to the police station unlawfully, in violation of the fourth amendment. The primary issue in this case is whether the six statements made during 14 hours of police custody should have been suppressed as the product of the illegal detention. The trial judge refused to suppress the statements. We agree with the trial judge. We also find no merit in the other issues raised by the defendant. We affirm his convictions and sentence.

FACTS

The State's case, at pretrial hearing and at trial, rested on the testimony of Chicago police detective James Cassidy and Assistant State's Attorney Steve Klaczynski.

The police received a telephone call from a woman calling herself Sheila Atkins. After several months of police investigation, Atkins provided a lead into the shootings of Smith and Rockett. Atkins told the police to look for two black teenagers named David and John in the area around Smith's home. In canvassing the area on August 22, 1994, Cassidy spoke with Smith's mother, who told him two black teenagers named David and John lived in the area near the Moore family on the 5900 block of South Eggleston. Cassidy spoke with the Moores, who told him David and John Wright (John) lived next door.

Cassidy found the Wright residence and spoke with Tawana Wright. Tawana admitted her sons were named David and John, but neither was home at that time. Later, at Area One Police Headquarters, Cassidy ran a computer background search on David and John. Cassidy learned John had an outstanding juvenile arrest warrant for possession of a controlled substance.

On August 23, 1994, the police returned to the Wright residence

and arrested John on the outstanding warrant. Cassidy asked John about the shooting. John pointed toward his residence and, according to Cassidy, said "[w]ords to the effect, if that's what this is all about, you should talk to my brother." According to David, the police entered the building, broke down the door to his room, shined a light in his eyes, and put a gun in his face. The police arrested David between 8 and 8:30 a.m. and then took David and John to Area One for questioning about the shooting deaths of Smith and Rockett. Cassidy put David and John in separate interrogation rooms. By the end of the day, David gave six statements, each offered at trial by the prosecution.

Cassidy, before questioning David, gave John *Miranda* warnings and spoke with him about Smith and Rockett. John said Smith and Rockett had beaten up David three days before the shootings. John also said he saw David immediately before the shootings, talking with Smith and Rockett on Smith's front porch and walking with Smith and Rockett toward Smith's backyard. John said he heard gunshots from Smith's backyard. Finally, John said David had admitted shooting Smith and Rockett and throwing away the gun.

Cassidy then gave David *Miranda* warnings around 11:30 a.m. David denied any involvement in the shooting deaths of Smith and Rockett (statement No. 1). When confronted with John's statement, David conceded he had had a recent altercation with Smith and Rockett. Then, David recanted and said Smith and Rockett died after Smith's handgun accidently discharged twice into Smith's and Rockett's temples during a scuffle as they attempted to bully David (statement No. 2). After hearing David's second statement, Cassidy called the prosecutor's office.

At approximately 3:30 p.m., Klaczynski, a felony review prosecutor, gave David *Miranda* warnings for a second time and spoke with him again about Smith and Rockett. David repeated the statement he made to Cassidy (statement No. 3). Klaczynski told him this statement conflicted with John's statement.

Klaczynski then turned his attention to John, who agreed to put his statement in writing. According to John's written statement, as published to the jury by Klaczynski:

> "John Wright stated that when he saw his brother David [two days after the shooting], he asked David what happened when he went to the backyard on the night of the shooting. John Wright stated that David Wright told him that Robert Smith and Mac-Ty [*sic*] Rockett tried to [']play him like a bitch['] ... so he shot them.
>
> John Wright stated that his brother David also told him that he got rid of the gun the same night that he shot Robert and Mac-Ty [*sic*]. John right [*sic*] stated that his brother David is a BD [Black

Disciple] gang member and Robert was with a GD [Gangster Disciple] gang member."

At approximately 5 p.m., Klaczynski gave David *Miranda* warnings for a third time and confronted him with John's written statement. According to David's trial testimony, after hearing John's statement, "I sit [*sic*] down and I was thinking about it." David then made another statement: on the night Smith and Rockett were shot, he was with John's girlfriend, Carol Wise, and two other women named "Nay-Nay" and "Sheen" (statement No. 4). According to David, the police grabbed his neck at this point in the interrogation. (The trial judge found the grab did not take place. Defendant does not challenge that finding in this appeal.) The police located Wise and obtained her written statement in which she denied she was with David that night.

At approximately 8 p.m., Klaczynski gave David *Miranda* warnings for a fourth time and confronted him with Wise's written statement. After reading Wise's statement, David made another statement: John had murdered Smith and Rockett while David stood as a lookout (statement No. 5). Klaczynski left the interrogation room and returned shortly. David received *Miranda* warnings for a fifth time and agreed to make a written, inculpatory statement around 10:30 p.m. (statement No. 6). This sixth and final statement reflects the prosecution's theory of what happened to Smith and Rockett.

The trial court granted David's motion to quash his arrest and suppressed any evidence flowing from his illegal detention. The prosecution requested and was granted a hearing on whether David's statements were attenuated sufficiently from his arrest. After the hearing, the trial court decided:

"The important intervening event was before the defendant gave any statement[;] he was confronted with the fact that his brother had rolled over on him in the use of the vernacular. It was only after this unusual event that the defendant, I find that the defendant made any statements."

The court also found the following facts: David had received *Miranda* warnings several times, understood these warnings, and waived his rights; sufficient time passed between the arrest and the confession to allow David to reflect on his actions; and the police conduct was never egregious while David was in custody.

At trial, John admitted he had made and approved his written statement, but claimed he lied and falsely implicated David because he feared the police.

David testified he confessed to murdering Smith and Rockett in an effort to protect John from receiving the death penalty. David

admitted he received *Miranda* warnings several times while in police custody. David also testified the Black Disciple gang "organization" controlled part of his neighborhood, while the Gangster Disciple gang "organization" controlled another part of his neighborhood.

The jury found David guilty of murdering both Smith and Rockett, and the trial court sentenced David to life imprisonment. This appeal followed.

OPINION

1. Admissibility of David's Six Statements

First, we determine the standard of review we must use.

■ Ordinarily, the decision of a trial court on a fourth amendment motion to quash and suppress will not be disturbed by a reviewing court unless that finding is determined to be clearly erroneous. *People v. Foskey*, 136 Ill. 2d 66, 76, 554 N.E.2d 192 (1990). This clearly erroneous or manifestly erroneous test is based on the understanding that suppression motions usually raise mixed questions of law and fact. *People v. Frazier*, 248 Ill. App. 3d 6, 12, 617 N.E.2d 826 (1993).

But where neither the facts nor the credibility of the witnesses is contested, the issue of whether probable cause exists "is a legal question which a reviewing court may consider *de novo*." *In re D.G.*, 144 Ill. 2d 404, 408-09, 581 N.E.2d 648 (1991).

In this case, at oral argument, defense counsel told us there is no challenge to the trial judge's findings of fact. Given that concession, we perform a *de novo* review of the trial judge's application of the law. See *People v. Bascom*, 286 Ill. App. 3d 124, 126-27, 675 N.E.2d 1359 (1997).

At the same time, the State concedes the correctness of the trial judge's finding that David's arrest at his home was unlawful. Although the subject matter of the sought-after suppression is a series of statements, this is a fourth amendment case and does not implicate the fifth amendment. See *People v. Tingle*, 279 Ill. App. 3d 706, 714, 665 N.E.2d 383 (1996). Our task, then, is to decide whether David's statements were the "product of the illegal detention." See *People v. Parker*, 284 Ill. App. 3d 860, 864, 672 N.E.2d 813 (1996).

■ The fruit of the poisonous tree, or attenuation, doctrine was pronounced by the Supreme Court in *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963). There, the statements made by Toy were held to be the fruits of illegal police action, while Wong Sun's confession was not. The difference was factual, and the controlling question was:

"[W]hether, granting establishment of the primary illegality, the

evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun,* 371 U.S. at 487-88, 9 L. Ed. 2d at 455, 83 S. Ct. at 417.

In that way, the deterrent value of the fourth amendment would be protected.

In *Wong Sun,* the Supreme Court did not delineate the circumstances that would dissipate the primary taint of illegality. Twelve years later, in *Brown v. Illinois,* 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254 (1975), the Court provided guidance.

The specific holding in *Brown* was that it was constitutional error to adopt a *per se* rule that *Miranda* warnings in and of themselves broke the causal chain between the primary illegality and the defendant's confession. Citing *Wong Sun,* 371 U.S. at 486, 9 L. Ed. 2d at 455, 83 S. Ct. at 417, the Court held the statement must be sufficiently "an act of free will unaffected by the initial illegality." *Brown,* 422 U.S. at 603, 45 L. Ed. 2d at 427, 95 S. Ct. at 2261.

No single fact decides the question. The *Miranda* warnings are an important factor in determining exploitation of illegality, but not the only factor. Courts also are to consider the temporal proximity of the arrest and the confession, the presence of intervening circumstances, "and particularly, the purpose and flagrancy of the official misconduct." *Brown,* 422 U.S. at 603-04, 45 L. Ed. 2d at 427, 95 S. Ct. at 2261-62. See also *People v. Gabbard,* 78 Ill. 2d 88, 95-96, 398 N.E.2d 574 (1979).

There is no but-for rule. The fact of an illegal arrest, standing alone, does not make a subsequent confession inadmissible. See *People v. Foskey,* 136 Ill. 2d 66, 554 N.E.2d 192 (1990). But the illegal arrest does place an added burden on the prosecution. To establish the admissibility of an inculpatory statement following an illegal arrest, the prosecution must show, by clear and convincing evidence, the statement was a product "of the defendant's free will, independent of any taint of the illegal arrest." *People v. Pierson,* 166 Ill. App. 3d 558, 563, 519 N.E.2d 1185 (1988).

With these principles in mind, we turn to the facts of this case.

■ Before David made the first of his six statements, a significant event had taken place. His brother, John, made an oral statement, based on firsthand knowledge, that connected David to the killings. John's statement included an admission by David that he shot Smith and Rocket and then threw away the gun.

This was not a typical codefendant's statement, which might require independent indicia of reliability. See *People v. James,* 118 Ill. 2d 214, 514 N.E.2d 998 (1987). John had not been arrested for the

murders. The person he implicated was his brother, with whom he lived. They were not strangers or enemies. Factual and practical "commonsense considerations" supported a finding of probable cause to arrest David. See *People v. Tisler*, 103 Ill. 2d 226, 236, 469 N.E.2d 147 (1984).

True, based on a single phone call, John might have been a suspect in the investigation, a fact that would give him an incentive to cooperate with the police, but that "does not automatically destroy the reliability of his statements implicating another [citation]; rather, it is simply a factor to be considered in assessing the totality of the circumstances." *People v. Lekas*, 155 Ill. App. 3d 391, 410, 508 N.E.2d 221 (1987).

In *Lekas*, as here, the information that established probable cause came from a brother about a brother.

This is not a case where John's statement might be said to be tainted by an illegal arrest. If that were the case, the direction of our analysis would change. See *People v. Austin*, 293 Ill. App. 3d 784 (1997); *People v. Beamon*, 255 Ill. App. 3d 63, 627 N.E.2d 316 (1993). John was in custody because of an outstanding warrant. The defense does not challenge the legality of John's detention.

It would be unreasonable to require the police to allow David to leave the police station, then rearrest him as he reached the sidewalk. See *Lekas*, 155 Ill. App. 3d at 414. We find that John's statement was sufficient to establish probable cause to detain David. At that point, David had not yet made his first statement.

While the intervening probable cause, by itself, might not be enough to purge the taint of David's illegal arrest, it becomes "an important attenuating factor in the analysis." *Pierson*, 166 Ill. App. 3d at 564. Its importance becomes greater when we consider that probable cause was established shortly after David arrived at the police station and before he was questioned.

As the day wore on, and before David made the sixth statement that supports the State's theory of the case, intervening events occurred that further dissipated any remaining taint: David was told his brother had implicated him; David was shown his brother's written statement; David was told Carol Wise did not support his alibi; *Miranda* warnings were given each time David was questioned; and David was treated well, given food, drink, and cigarettes, and allowed to go to the bathroom on request.

Knowledge that the results of a police investigation contradicted the defendant's alibi account was held to be a significant intervening circumstance in *People v. Tankson*, 92 Ill. App. 3d 328, 415 N.E.2d 1218 (1980).

*Brown* instructs us that the giving of *Miranda* warnings is a factor to consider when we analyze the question of attenuation. See also *People v. Bracy*, 152 Ill. App. 3d 566, 573, 504 N.E.2d 764 (1986). We give the warnings some, but not great, weight because we recognize "[a]rrests made without warrant or without probable cause, for questioning or 'investigation,' would be encouraged by the knowledge that evidence derived therefrom could well be made admissible at trial by the single expedient of giving *Miranda* warnings." *Brown*, 422 U.S. at 602, 45 L. Ed. 2d at 426, 95 S. Ct. at 2261. See *People v. Townes*, 91 Ill. 2d 32, 39, 435 N.E.2d 103 (1982). Still, five waivers after separate *Miranda* warnings cannot be ignored.

We note, too, the 14 hours of David's detention before giving his sixth and final statement were not times of incessant or relentless interrogation. Nor was there any police or prosecutorial misconduct at the police station. The trial judge found David had time to reflect. He did more than reflect. He schemed to find a version that would aim guilt elsewhere, including at his brother. As David told the jury, he "was thinking about it."

Whatever impact the circumstances of arrest had on David, we believe events occurring at the police station intervened sufficiently to make admission of his six statements constitutionally acceptable. The State proved that by clear and convincing evidence.

2. Evidence of Gang Affiliation

■ David also contends the trial court erred in admitting evidence of his gang affiliation.

"[E]vidence of gang affiliation need not be excluded if it is otherwise relevant and admissible. [Citations.] It is generally held that evidence indicating the defendant was a member of a gang or was involved in gang-related activity is admissible to show common purpose or design, or to provide a motive for an otherwise inexplicable act. [Citations.] Such evidence, however, is only admissible where there is sufficient proof that such membership or activity is related to the crime charged." *People v. Smith*, 141 Ill. 2d 40, 58, 565 N.E.2d 900 (1990).

Accord *People v. Colon*, 162 Ill. 2d 23, 642 N.E.2d 118 (1994); *People v. Gonzalez*, 142 Ill. 2d 481, 568 N.E.2d 864 (1991); see *People v. Williams*, 228 Ill. App. 3d 981, 989, 593 N.E.2d 968 (1992) ("Evidence of gang membership may be used to show motive"); *People v. Anderson*, 153 Ill. App. 3d 542, 505 N.E.2d 1303 (1987); *People v. Jackson*, 145 Ill. App. 3d 626, 495 N.E.2d 1207 (1986). Evidentiary rulings on gang-related evidence will not be overturned unless the trial court abused its discretion. *Gonzalez*, 142 Ill. 2d at 489-90.

In this case, defense counsel said in opening statement the prosecution would fail to show motive. In order to counter this assertion, the prosecution sought to offer some gang-related evidence to show motive, and defense counsel moved *in limine* to bar such evidence. The trial court denied this motion. John's written statement implicating David, published to the jury by Klaczynski, mentioned David and Rockett were members of rival gangs. Additionally, David testified the railroad tracks near his house separated rival gangs or "organizations."

Here, the trial court carefully weighed the probative value of this gang-related evidence against its potential to unfairly prejudice David's defense and admitted this evidence as relevant to David's motive in shooting Smith and Rockett. This evidentiary ruling was not an abuse of discretion.

David finally contends defense counsel was ineffective because she opened the door to gang-related evidence by disputing motive in her opening statement.

■ Claims of ineffective assistance of counsel are analyzed under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). *People v. Albanese*, 104 Ill. 2d 504, 473 N.E.2d 1246 (1984). Under *Strickland,* a defendant must prove counsel's performance fell below an objective standard of reasonableness and this substandard performance caused enough prejudice to create a reasonable probability that, but for counsel's errors, the jury would have reached a different result. *People v. Alvine*, 173 Ill. 2d 273, 293, 671 N.E.2d 713 (1996); *People v. Rice*, 257 Ill. App. 3d 220, 226, 628 N.E.2d 837 (1993). Matters of trial tactics do not give rise to ineffective assistance claims under *Strickland. People v. C.H.*, 237 Ill. App. 3d 462, 603 N.E.2d 1280 (1992).

■ Here, David's trial counsel chose to dispute, in her opening statement, the issue of David's possible motive for shooting Smith and Rockett. This decision fell squarely within the tactical province of an attorney. See generally *People v. Anderson*, 266 Ill. App. 3d 947, 956, 641 N.E.2d 591 (1994) (discussing decisions left to "the superior ability of trained counsel"). Additionally, defense counsel attempted to forestall introduction of any gang-related evidence by presenting a motion *in limine,* which the trial court denied. David cannot challenge these decisions as substandard performance.

David cannot show the result of his trial would have been different if defense counsel had not opened the door to gang-related evidence. In light of the strong evidence of David's guilt, David suffered no prejudice from his more than adequate representation by defense counsel. As the trial court noted following the jury's verdict, "Mr.

Wright, you got your money's worth. I'll tell you that." David's ineffective assistance claim must fail.

## CONCLUSION

The trial court's decision that David Wright's statements were sufficiently attenuated from his illegal arrest was not erroneous. The trial court did not abuse its discretion in admitting gang-related evidence. Defense counsel was not ineffective. We affirm the defendant's convictions and sentence.

Affirmed.

McNAMARA and SOUTH, JJ., concur.