983 F.2d 1072
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Fabio DIAZ, Petitioner/Appellant,
v.
Thomas RICHARDS and Indiana Attorney General Respondents/Appellees.
 No. 92-1216.
 United States Court of Appeals, Seventh Circuit.
 Submitted Dec. 9, 1992.*
Decided Jan. 7, 1993.
Rehearing Denied April 12, 1993.
 
 Before CUDAHY, POSNER, and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Pro se appellant Fabio Diaz, an inmate of the Westville Correctional Center, appeals from the district court's denial of his petition for a writ of habeas corpus, 28 U.S.C. § 2254. In a two-count indictment, Mr. Diaz was charged with Dealing in Cocaine, a Class A felony, Ind.Code § 35-48-4-1 (Count I), and with violating the Indiana Uniform Controlled Substances Act, a Class C felony, Ind.Code § 35-48-4-6 (Count II). Mr. Diaz pleaded guilty to Count I and was given a twenty year sentence. Mr. Diaz's principal allegation on appeal appears to be that at the time of his hearing on a motion to suppress, certain evidence was concealed from him and his counsel. The state's concealment of evidence led, Mr. Diaz contends, to the denial of his motion to suppress, which in turn led to his decision to enter into a plea agreement. On appeal, Mr. Diaz claims that he is entitled to a full evidentiary hearing to vindicate his constitutional rights.[1] Also before us is Mr. Diaz's motion to supplement the record on appeal.
 
 I. BACKGROUND
 
 2
 Mr. Diaz, an illegal alien from the Dominican Republic, was detained outside his apartment by three detectives of Marion County, Indiana, pursuant to a warrant to search the apartment. Two large plastic bags and a small bottle of white powder were found on his person, and a small bottle of white powder, a triple beam scale, a bottle of cutting agent and sifters were found in his apartment. The white powder tested positive for cocaine.
 
 
 3
 Mr. Diaz's motion to suppress evidence challenged the validity of the search warrant on the grounds that material information had been intentionally omitted from the affidavit of probable cause.[2] After a hearing held on March 18, 1986, where Mr. Diaz was represented by counsel, the court denied the motion.
 
 
 4
 At the hearing on Mr. Diaz's guilty plea, the court first determined that Mr. Diaz could read and write sufficiently well to understand its terms. The court then recited the rights Mr. Diaz was giving up by pleading guilty, and questioned Mr. Diaz concerning his understanding of each of those rights. He was advised that he faced twenty years in jail as a result of his guilty plea, and was advised of the potential criminal penalties he would face were he convicted as charged after a trial. The court also determined that Mr. Diaz's guilty plea was factually based. Mr. Diaz expressed some dissatisfaction with his attorneys on the grounds that the motion to suppress had been denied, and that he could not be deported until he served his sentence. The court explained to Mr. Diaz that deportation is not available as a penalty for violating the laws of the state. At a subsequent sentencing hearing, a sentence of twenty years in prison was imposed, and Mr. Diaz stated he was satisfied with his attorney.[3]
 
 
 5
 Mr. Diaz then sought collateral relief in state court. In a petition for Post-Conviction Relief, filed July 30, 1987, Mr. Diaz claimed that his guilty plea was not knowing and voluntary, that he was not afforded an interpreter, and that he was denied representation by his embassy. At this time, Mr. Diaz was also writing letters complaining about the state's failure to return certain property that was seized during the search of his apartment. Mr. Diaz also filed a supplemental petition for Post-Conviction Relief, complaining that the state had failed to disclose certain favorable evidence, apparently at or before the hearing on Mr. Diaz's motion to suppress, and that evidence obtained in the search of his apartment was being used by the Immigration and Naturalization Service (INS) to deport him. Mr. Diaz complained that he was never advised of the fact that this evidence could be used for the purpose of deporting him after he served his sentence.
 
 
 6
 Hearings were held in the Marion Superior Court on December 7, 1988 and January 17, 1989, with Mr. Diaz being represented by counsel. At these hearings, it was established that Mr. Diaz understood and spoke English sufficiently well to understand the consequences of his guilty plea and cooperate with counsel in his defense, and that Mr. Diaz had indicated to his attorney that he wanted to be deported instead of going to jail, and would in any case leave the United States at the conclusion of his sentence. Mr. Diaz's petition was denied in an unpublished opinion on February 24, 1989.[4]
 
 
 7
 Mr. Diaz then filed a petition for habeas corpus under 28 U.S.C. § 2254 in federal district court. In this petition, Mr. Diaz again complained that his motion to suppress had been wrongly denied, and he asserted that he had not been afforded a full and fair opportunity to litigate his Fourth Amendment claim because he had not been informed that evidence seized during that search would later be used by the INS in deportation proceedings.[5] He also alleged ineffective assistance of counsel, and stated that both the court and counsel impeded his efforts to appeal the denial of his motion to suppress. The district court denied his petition. On appeal, Mr. Diaz again argues that he did not have a full and fair opportunity to litigate his Fourth Amendment claim, that the original search warrant in this case was based on a false affidavit, and that he was not informed that evidence obtained in that search would be used to deport him. Mr. Diaz also asserts that he was misled by counsel concerning his right to appeal the denial of the motion to suppress. In his Reply Brief, however, Mr. Diaz states that counsel erred only because he, too, did not know that the search warrant was supported by a false affidavit, and that the evidence obtained would be used in deportation proceedings. Mr. Diaz further asserts that he would not have pleaded guilty had the court or his attorney advised him of the deportation consequences of his plea.
 
 II. ANALYSIS
 
 8
 As a preliminary matter, we note that Mr. Diaz's apparent claim that the search warrant issued in this case was not based upon probable cause received a full and fair hearing on the pretrial motion to suppress. The "new evidence" Mr. Diaz alludes to, concerning material omissions in the affidavit supporting the search warrant, was known to Mr. Diaz's counsel and was ably presented to the court. Where a person convicted in state court has been provided a full and fair opportunity to litigate a Fourth Amendment claim, he may not challenge his conviction in a federal habeas proceeding on this ground. See Stone v. Powell, 428 U.S. 465, 481-82, 96 S.Ct. 3037, 3046 (1976); Pierson v. O'Leary, 959 F.2d 1385, 1392 (7th Cir.), cert. denied, 121 L.Ed.2d 115 (1992); U.S. ex rel. Shiflet v. Lane, 815 F.2d 457, 462 (7th Cir.1987), cert. denied, 485 U.S. 965, 108 S.Ct. 1234 (1988). Mr. Diaz's Fourth Amendment claim is thus precluded.
 
 
 9
 Mr. Diaz next argues that had he known that the evidence gathered pursuant to the challenged warrant could be used to deport him, he would not have pleaded guilty. Mr. Diaz may be fairly heard to argue that (1) his guilty plea was not knowing and voluntary, since he was not made aware of the deportation consequences of his plea, and (2) counsel's failure to advise him of the consequences of his plea amounts to ineffective assistance of counsel. We will consider these arguments in turn.
 
 
 10
 In order for a plea of guilty to be valid, it must be made voluntarily, and with sufficient knowledge of the direct consequences that are likely to result. Brady v. United States, 397 U.S. 742, 747-48, 755, 90 S.Ct. 1463, 1468-69, 1472 (1970). The possibility of deportation, however, is not a direct result of a guilty plea in a drug prosecution, but is only a collateral consequence, and lies within the sole discretion of the Attorney General, not the trial judge. See U.S. v. Montoya, 891 F.2d 1273, 1293, 1293 n. 24 (7th Cir.1989). Although a trial judge must ensure that a defendant's guilty plea is entered knowingly, he is not required to advise the defendant that deportation is a possible consequence of his guilty plea. See id. at 1292-93; Santos v. Kolb, 880 F.2d 941, 944 (7th Cir.1989), cert. denied, 493 U.S. 1059, 110 S.Ct. 873 (1990). In this case, the trial judge established that Mr. Diaz's guilty plea was factually based, and took careful steps to explain to Mr. Diaz all the direct consequences of that plea. The failure to inform Mr. Diaz of a collateral consequence of his guilty plea, if indeed there was such failure, would have no bearing its validity.
 
 
 11
 In order for Mr. Diaz to show ineffective assistance of counsel, he must demonstrate that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-88, 694, 104 S.Ct. 2052, 2064-65, 2068 (1984); Santos, 880 F.2d at 943. In the case of a guilty plea, the second prong of the Strickland test requires Mr. Diaz to show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty. Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370 (1985). Specifically, counsel's errors must have resulted in a guilty plea that is defective by virtue of being either involuntary or unintelligent. Santos, 880 F.2d at 944. As we have already discussed, a guilty plea is not unintelligent simply because the defendant was not made aware of all the collateral consequences of his plea, including the possibility of deportation. See id.; United States v. George, 869 F.2d 333, 338 (7th Cir.1989). In this case, Mr. Diaz discussed the possibility of seeking deportation as an alternative to incarceration with his attorney, stating that he desired to return to the Dominican Republic and would prefer to be deported. Mr. Diaz's attorney advised him that this was not an option, and that if convicted, he would be required to serve his sentence before he could leave the jurisdiction. Under these circumstances, Mr. Diaz cannot claim that he was misled as to the consequences of his plea, and in any event cannot base a claim of ineffective assistance of counsel on his attorney's alleged failure to inform him that he could be both incarcerated and deported as a result of his conviction.[6]
 
 
 12
 Finally, Mr. Diaz moves to supplement the record on appeal with certain documents concerning Mr. Diaz's proceedings before the Indiana Court of Appeals. The purpose of including this material in the record appears to be to show that Mr. Diaz has neither procedurally defaulted nor failed to exhaust state court remedies on his claims. The record before us already demonstrates this. Since there is no need to supplement the record, the motion is denied. See, e.g., First Alabama Bank v. Parsons Steel, Inc., 825 F.2d 1475, 1487 (11th Cir.1987), cert. denied, 484 U.S. 1060, 108 S.Ct. 1015 (1988).
 
 CONCLUSION
 
 13
 For the foregoing reasons, the district court's denial of Mr. Diaz's petition for habeas corpus is
 
 
 14
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). The Petitioner/Appellant has filed a statement requesting oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record
 
 
 [1]
 Mr. Diaz's other claims, including a request to compel production of the complete state court record, and a claim of ineffective assistance of counsel, appear to rest on his central argument that he did not receive a full and fair hearing on his motion to suppress evidence obtained in violation of his Fourth Amendment rights
 Another reading of Mr. Diaz's repeated reference to "evidence" that was allegedly withheld by the state concerns his claim that he was not told of the possible deportation consequences of his guilty plea. Since Mr. Diaz has not procedurally defaulted on this claim, we will address it.
 
 
 [2]
 Information not presented in the affidavit, and unknown to the magistrate who issued the search warrant, includes the fact that the police had used a paid informant who was a drug user or an addict, and who had alleged that Mr. Diaz sold him cocaine but could not account for the cocaine. Furthermore, the informant's purchase of cocaine violated police guidelines for the use of informants
 
 
 [3]
 A direct appeal of the denial of Mr. Diaz's motion to suppress was denied on March 21, 1991 by the Court of Appeals of Indiana, Fourth District
 
 
 [4]
 Yet another petition for Post-Conviction Relief was filed in state court on February 22, 1989. This petition included the claim that Mr. Diaz's conviction was obtained by use of evidence seized in violation of the Fourth Amendment. A note indicates that it was summarily dismissed by the court on February 24, 1989
 
 
 [5]
 On September 7, 1988, Mr. Diaz was ordered deported pursuant to 8 U.S.C. §§ 1251(a)(2) and (11), for remaining longer than permitted in the United States, and for being convicted of a controlled substance violation. His appeal before the Board of Immigration Appeals was dismissed
 
 
 [6]
 We also note that Mr. Diaz was not, strictly speaking, deported on the basis of the evidence seized. Mr. Diaz was deported on the basis of his illegal status in the United States, and his conviction for a controlled substance violation, which was supported by that evidence. As we have already discussed, a Fourth Amendment challenge to the seizure of the evidence, having received a full and fair hearing in state court, is now precluded