THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALFRED BEAMON *et al.*, Defendants-Appellants.

First District (6th Division)   Nos. 1—92—0145, 1—92—0890 cons.

Opinion filed October 8, 1993.

Rita A. Fry, Public Defender, of Chicago (Timothy J. Leeming, Assistant Public Defender, of counsel), for appellant Alfred Beamon.

Michael J. Pelletier and Maria A. Harrigan, both of State Appellate Defender's Office, of Chicago, for appellant Quinton Moore.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Eileen O'Neill, Anthony Carl, and Gael McCaughey-O'Brien, Assistant State's Attorneys, of counsel), for the People.

JUSTICE EGAN delivered the opinion of the court:

After a joint trial by separate juries, the defendants Alfred Beamon and Quinton Moore were found guilty of murder, residential burglary and armed violence and sentenced to 80 years' imprisonment. Before trial, the defendants filed motions to suppress their confessions on the ground that their confessions were the result of illegal arrests. The trial judge denied the motions. He held that the police did not have probable cause to arrest the defendants when they went to the defendants' homes to question them. But the judge also held that the defendants were not under arrest when they went to the police station. We reversed the trial judge's finding that the defendants

were not under arrest when they were taken from their homes to the police station for questioning. (*People v. Beamon* (1991), 213 Ill. App. 3d 410, 572 N.E.2d 1011.) We assumed that the State recognized that the police lacked probable cause to arrest the defendants when they were taken from their homes. That being so, their arrests would be illegal. We remanded the case to the trial court for a hearing to determine whether there was sufficient attenuation to purge the defendants' statements from the taint of their illegal arrests. After a hearing, the trial judge found sufficient attenuation and reinstated their convictions. The defendants, in separate appeals, contend that the judge's finding was against the manifest weight of the evidence. We ordered the appeals consolidated.

■ The State initially asks that we remand Beamon's case for a hearing at which, the State maintains, it could establish probable cause for the arrest of Beamon at his home before he made any inculpatory statements. For some unexplained reason, the State does not make this argument in Moore's appeal. We regard this argument with a total lack of appreciation. The argument has been waived. In the written motion to suppress filed at the first trial, the defendant Beamon maintained that he had been arrested without probable cause. His attorney argued a lack of probable cause to arrest him that morning. The State did not make any argument. The judge said, "Sure, they didn't have probable cause at that time." Later he said, "This is why probable cause isn't an issue. They [the prosecutors] are not alleging that they had probable cause at the time they brought him [Beamon] in." The prosecutors made no response to that statement by the judge.

After we ordered an attenuation hearing, the State did not ask for clarification of our opinion, nor did it ask for a modification of the opinion which would permit it to present further evidence after remandment that would show that the police had probable cause to arrest Beamon.

At the hearing after remandment, the State did not advance the argument that probable cause existed. Indeed, the prosecutors made no response when the attorney for Moore told the judge that the judge had previously ruled that the police lacked probable cause to arrest the defendants at their homes. Now, after having two opportunities to argue probable cause in the trial court and one opportunity to argue probable cause in this court, the State asks us to give it a third opportunity to do so in the trial court. We refuse. Therefore, the posture of the case before us is this: The defendants were arrested illegally, that is, without probable cause when they were taken from their

homes; and the only issue before us is whether the evidence establishes that there was sufficient attenuation to purge the defendants' statements from the taint of their illegal arrests.

We turn now to the issue of attenuation. The facts of the case are set forth in detail in our previous opinion, and we will repeat the facts only to the extent necessary to decide the narrow issue before us.

Dennis Moody was murdered on December 18, 1986. About five police officers went to Moore's house around 8:30 a.m. on December 19, to bring him to the station. After being advised of his *Miranda* rights at the station, Moore first said that he knew nothing about the murder. When questioned one hour later, he said that on the day of the murder he had been drinking at Beamon's house.

The police then went to Beamon's house about 10 a.m. and took him to the station for questioning. After being placed in an interview room and being advised of his *Miranda* rights, Beamon told the police that on the day of the murder he was home sick with the flu and that he had not seen Moore for weeks. When informed of Moore's conflicting statement, Beamon agreed to submit to a polygraph examination. He and the police arrived at the place where the examination was to be conducted about 2 p.m. Before taking the test, Beamon was advised of his *Miranda* rights. After the test, the examiner informed Beamon that the test results indicated he was not telling the truth. Beamon said that he had not been truthful, that he was present when Moody was killed and that he wanted to tell the truth.

The polygraph examiner told the officers who had accompanied Beamon of Beamon's inculpatory statement. The officers then took Beamon back to the station, stopping at a restaurant on the way to buy food for Beamon and Moore.

Beamon and the officers arrived back at the station about 4 p.m. Beamon was again advised of his rights, and he gave another inculpatory statement in which he stated that Moore was responsible for the murder. Moore was again advised of his rights and confronted with Beamon's statement. He then gave an inculpatory statement. At 10:30 p.m., an assistant State's Attorney advised Moore of his rights and obtained a court-reported confession which Moore signed.

An assistant State's Attorney had a conversation with Beamon at 9 p.m. About 11 p.m., another assistant State's Attorney advised Beamon of his rights and had a conversation with him. A court reporter was called, and about 12:30 a.m. on December 20, Beamon gave another inculpatory statement which was transcribed; about 2:45 a.m. Beamon read and signed it.

The trial judge gave no explanation for his ruling; he said only that he found that "the State had satisfied its burden."

■ The issue before us is whether the defendants' inculpatory statements were obtained by exploitation of the illegality of their arrests. (*Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254.) To be admissible, a statement following an illegal arrest must be sufficiently an act of free will to purge the taint of the illegal arrest. (*People v. Foskey* (1990), 136 Ill. 2d 66, 554 N.E.2d 192.) In *Brown*, the Supreme Court set forth four guidelines for determining whether a statement was the product of an illegal arrest: (1) the proximity in time between the arrest and the statement; (2) the presence of intervening circumstances; (3) the purpose and flagrancy of the police misconduct; and (4) whether *Miranda* warnings were given. (*Brown*, 422 U.S. at 603-04, 45 L. Ed. 2d at 427, 95 S. Ct. at 2261-62.) The burden of demonstrating that the defendant's statement was not the result of the illegal arrest rests upon the prosecution. *Brown*, 422 U.S. at 604, 45 L. Ed. 2d at 427, 95 S. Ct. at 2262.

In *People v. White* (1987), 117 Ill. 2d 194, 512 N.E.2d 677, the supreme court upheld an order suppressing a statement of a defendant who had been illegally arrested. The State argued that the statement was not the "tainted 'fruit' of [the defendant's] illegal arrest." (*White*, 117 Ill. 2d at 222.) The supreme court disagreed, with observations applicable here. *Miranda* warnings, alone and *per se*, cannot dissipate the taint of an illegal arrest. (*White*, 117 Ill. 2d at 223.) The "temporal proximity" factor was discussed thus:

> "The temporal proximity between an arrest and a confession is often an ambiguous factor, the significance of which will depend upon the particular circumstances of a particular case. Indeed, '[i]f there are no relevant intervening circumstances, a prolonged detention may well be a more serious exploitation of an illegal arrest than a short one. Conversely, even an immediate confession may have been motivated by a prearrest event such as a visit with a minister.' [Citations.] Thus, where intervening circumstances are present, a long period between arrest and confession may support the inference that it was the intervening circumstance, and not the illegal arrest, which prompted the confession. However, where no intervening circumstances are present, a long and illegal detention may in itself impel the defendant to confess." *White*, 117 Ill. 2d at 223-24.

The court also deprecated the State's argument that the conduct of the police was not "flagrant" because the defendant was not mistreated, nor even handcuffed, while in custody. In doing so, the court

emphasized "the lack of any intervening circumstance which caused the defendant to confess." *White*, 117 Ill. 2d at 227.

We read *White* to mean that the most important factor of the four factors enunciated in *Brown* is the presence or absence of intervening circumstances between the time of the illegal arrest and the confession. *Cf. People v. Stofer* (1989), 180 Ill. App. 3d 158, 534 N.E.2d 1287 (whether the relevant time constitutes sufficient attenuation depends considerably on whether any intervening event occurred and the nature of that event); see also 4 W. LaFave, Search & Seizure §11.4(b), at 393 (2d ed. 1987) (temporal proximity is the least determinative factor).

In *People v. Avery* (1989), 180 Ill. App. 3d 146, 534 N.E.2d 1296, Steven Avery, Ramsey Lewis and Tracy Stofer were charged with the murder of Nathaniel Corley. Stofer's motion for a severance was granted, but a joint hearing was held on the three defendants' motions to suppress their statements. The trial judge denied the motions to suppress on the ground that their statements did not result from their illegal arrests. The appellate court reversed that denial.

In our opinion remanding this case for an attenuation hearing, we said that the "facts of this case are, in large measure, similar to those of *People v. Avery*." (*Beamon*, 213 Ill. App. 3d at 425.) We made that observation when discussing whether the defendants were arrested when they were taken from their homes. We repeat that observation in deciding the question of whether circumstances intervened between the illegal arrest and the defendants' confessions. In *Avery*, Stofer was arrested at 11 a.m. on March 3, 1985, when the police took him from his home. He told the police that he had been at a party with Avery and Lewis the night before. He said that later he was driving around in a car with Lewis, Avery and Thomas Leatherwood. The officers went to find Avery and Lewis.

At 1 p.m. the police saw Lewis, who went with them to the police station where he told them that he and Stofer had been at a party and then drove around until about 1:30 a.m. The officers told Lewis that Stofer gave a different version which mentioned other boys. Lewis then agreed that Avery and Leatherwood were with them. The officers then left to find Avery.

At 3 p.m. the officers found Avery at his home. They told his mother that they were investigating the Corley shooting and that Stofer and Lewis were at the station; they wanted to talk to Avery about the shooting. At the station, Avery told the police that he was driven home at about 11:30 p.m. by Stofer and then went to bed. The

officers told Avery that his friends reported a completely different story. Avery denied being with Leatherwood or Lewis.

At about 5 p.m., Avery, Lewis and Stofer were placed under arrest and given their *Miranda* rights for the first time. The officers spoke to them several times after the arrest. At about 7 p.m., Lewis made statements incriminating himself, Avery and Stofer. At 8 a.m., one officer returned to Stofer and told him that Lewis and Avery accused him of shooting Corley. Stofer said that he saw Corley on the street and Lewis and Avery left his car and confronted Corley. Stofer left the car, heard several shots, and then the three returned to the car. Avery or Lewis threw the gun out the window.

Avery gave a statement after he was shown the statement signed by Lewis. Avery said that Stofer had done the shooting. The officer returned to Lewis and confronted him with Avery's latest statement. Lewis agreed that all three got out of the car and confronted Corley and that Stofer had shot and killed Corley. The officer then returned to Stofer and confronted him with the statements of Lewis and Avery.

The appellate court reversed the order denying the motion to suppress the statements. The court first held that all three defendants had been arrested illegally when they were taken to the police station. The court also found that the temporary proximity between Lewis' arrest and confession was six hours and between Avery's arrest and confession was four hours. The court concluded that "[c]onsidering the surrounding circumstances of the investigatory, custodial interrogation, these time periods were insufficient to attenuate the illegal arrest." *Avery*, 180 Ill. App. 3d at 155.

The State argued that intervening circumstances occurred when each defendant was confronted with his companions' statements. The appellate court rejected that argument:

> "The confrontation of an arrestee with untainted evidence may constitute an independent intervening circumstance. [Citation.] Confrontation with incriminating evidence purges the taint of an illegal arrest, however, only where the evidence itself is not a product of the illegal arrest. [Citations.] Defendants' statements were extracted after being confronted with their codefendants' statements. Avery and Lewis were arrested, however, as a result of Stofer's illegal arrest." *Avery*, 180 Ill. App. 3d at 155.

In the case before us, the State argues that intervening circumstances occurred between Beamon's arrest and statement when Beamon was confronted with Moore's conflicting statement and when Beamon took the polygraph test. *Avery* instructs us that Moore's

statement cannot be relied upon as an intervening circumstance because Moore's conflicting statement was the result of Moore's illegal arrest.

We recognize that in *People v. James* (1987), 118 Ill. 2d 214, 514 N.E.2d 998, the supreme court held that a defendant lacked standing to claim that his confession is the product of the illegal arrest of another; but the defendant in *James* had himself not been illegally arrested. The issue in *James* was probable cause, not attenuation.

The State has cited *People v. Holman* (1993), 250 Ill. App. 3d 503, in which the defendant told the police that Richie Cole was with him in the home of the murder victim on the night she was murdered. The police arrested Cole, who implicated himself and the defendant in the murder. The police returned to the station, arrested the defendant and confronted him with Cole's confession. The defendant then confessed. A majority of the appellate court affirmed the conviction and held that the defendant was not arrested until he was confronted with Cole's confession. Therein lies the overriding distinction between the case before us and *Holman*. In *Holman* the defendant gave information leading to Cole before the defendant was arrested. In this case, Moore gave information that led to Beamon after Moore had been illegally arrested. We conclude that the State's use of evidence obtained as a result of the illegal arrest of Moore may not serve to attenuate the taint of Beamon's illegal arrest.

We reach the same result with respect to the polygraph examination of Beamon. In *People v. Franklin* (1987), 115 Ill. 2d 328, 504 N.E.2d 80, the court reasoned that since the polygraph examination itself is a form of interrogation, a defendant's willingness to submit to it could not, by itself, operate to purge the taint of an illegal arrest. The *Franklin* court cited with approval *People v. Thomas* (1984), 123 Ill. App. 3d 857, 463 N.E.2d 832, in which the court held:

"[W]e do not find that administering such a [polygraph examination] to one in custody pursuant to an illegal arrest and then confronting him with the results of what has been judicially held to be a test of dubious scientific validity constitutes the type of independent intervening circumstance contemplated in *Brown*." (*Thomas*, 123 Ill. App. 3d at 864.)

Therefore, the administration of the test and confronting Beamon with the test results, immediately after which Beamon inculpated himself, was not an attenuating factor. Likewise, the fact that Beamon was advised of his *Miranda* rights after he was taken to the station is not, by itself, sufficient to purge the taint of the illegal arrest. *Brown*, 422 U.S. at 603, 45 L. Ed. 2d at 427, 95 S. Ct. at 2261.

The final factor is the purpose and flagrancy of the police misconduct. Moore was 17 years old and had never been arrested before. He was taken from his home in December without a coat and without socks. He was not given the right to have a relative accompany him to the police station. He was first fed eight hours after he was arrested. He was interrogated at least three times and perhaps five times. He and Beamon were both roused from their beds. There were five police officers in their homes, three of whom had been stationed outside initially and were instructed to arrest anyone who tried to leave. To be sure, there are other cases where the conduct of the police is more flagrant, but no fair-minded person could deny that the conduct of the police in effecting illegal arrests in this case was purposeful.

■ In summary, although Beamon was advised of his *Miranda* rights and the officers' conduct was not flagrantly abusive, there was a relatively brief lapse of time, five hours, between Beamon's arrest and his first inculpatory statement. We have held that Moore's statement was not an intervening circumstance nor were the results of the polygraph test. The factors leading up to Beamon's first inculpatory statement constituted one continuous chain of events that flowed from the illegal arrests of both Moore and Beamon and was never interrupted or broken by any demonstrably effective event or series of events sufficient to purge the taint of the illegal arrest. Therefore, we hold that Beamon's confession should have been suppressed.

Applying the principles of *Brown* to Moore's case, we find again that there was insufficient attenuation to purge the taint of his illegal arrest. We reject the State's claim that confronting Moore with Beamon's statement incriminating Moore constituted an intervening circumstance for the same reasons that we ascribe in our discussion of the case against Beamon. Moore had been illegally arrested; he gave them Beamon's name; Beamon was illegally arrested and confessed, implicating Moore. Clearly, Moore's confession was also the result of a continuous chain of events that was not interrupted or broken by any demonstrably effective event or series of events sufficient to purge the taint of the illegal arrest. Consequently, Moore's confession also should have been suppressed.

Both defendants have asked that their convictions be reversed and the cause remanded for further proceedings. Because neither defendant has questioned the sufficiency of the State's evidence, no double jeopardy considerations bar remand; therefore, we remand for a new trial. *People v. Cole* (1988), 168 Ill. App. 3d 172, 522 N.E.2d 635.

For these reasons, the judgments of the circuit court are reversed and the causes are remanded for further proceedings.

Judgments reversed and remanded.

RAKOWSKI and GIANNIS, JJ., concur.