THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONELL AUSTIN, Defendant-Appellant.

First District (6th Division)    No. 1—96—2864

Opinion filed November 26, 1997.

QUINN, J., specially concurring.

James Geis, of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Alan J. Spellberg, and Scott A. Herbert, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

Following a bench trial, defendant was convicted of first degree murder, armed robbery, and conspiracy to commit first degree murder. Defendant now challenges those convictions, raising three issues: (1) whether the trial court erred in refusing to suppress his confession by reason of its attenuation subsequent to defendant's unlawful arrest; (2) whether the evidence supports the convictions; and (3) whether the trial court erred in imposing consecutive sentences.

For the reasons that follow, we hold that the trial court erred in refusing to suppress defendant's confession. We reverse the conviction and remand for a new trial.

On November 16, 1992, Rufus Simpson was found murdered. He had been shot in the back of the head twice. Simpson's vehicle and some other property were missing from his home. More than two months later, on January 23, 1993, police recovered the remains of the burned-out vehicle near the residence of Bobby Walley. Detective Michael Flemming reviewed telephone records, which indicated that phone calls had been made between Eric Watkins' residence (stepson of the victim), the victim's residence, and Bobby Walley's residence. On January 27, 1993, Fleming and another officer observed defendant, Jamal Dorrough, Kevin Taylor, and Bobby Walley leave Walley's residence. At approximately 2:30 p.m., the officers brought the four men to the police station and placed them in separate interview rooms.

At 3:30 p.m., Fleming spoke with Taylor. Taylor denied any knowledge of the homicide. At 3:45 p.m., Fleming spoke with Dorrough after advising him of his *Miranda* rights. Dorrough made no admissions. At 4 p.m., Fleming spoke with Walley after administering the *Miranda* admonition. This conversation lasted approximately 15 minutes, during which time Walley made no admissions. At 4:15 p.m., Fleming spoke with defendant after reading defendant his rights against self-incrimination. That conversation also lasted approximately 15 minutes; defendant made no admissions.

At 4:30 p.m., Fleming had a second conversation with Taylor, who admitted knowledge of the homicide, stating that he had a

conversation with Dorrough a week after the homicide in which Dorrough stated that the victim was dead and that "they" had done it, meaning defendant, Dorrough, Walley, and Eric Watkins. Taylor also stated that he had a conversation with Watkins wherein Watkins told him that they had done the killing. Taylor acknowledged that he was at Walley's residence prior to the murder and heard a conversation in which Watkins stated that he wanted his stepfather killed.

At 5 p.m. Fleming had a second conversation with Dorrough and confronted him with Taylor's statements. Dorrough stated that he was part of the conversation in which Watkins indicated that he wanted to have his stepfather killed and further admitted being present when Simpson was killed. He identified defendant as the shooter and described how it was accomplished. He admitted taking property from the residence.

At 5:30 p.m. Fleming spoke with Walley again, confronting him with the statements from Taylor and Dorrough. Walley then confessed his involvement with the homicide.

At 6 p.m. Fleming spoke with defendant again. He told defendant of the other conversations. Defendant did not make a statement regarding his involvement.

Between 6:30 p.m. and 7:30 p.m., Fleming had further communication with Dorrough and Walley, learning additional facts. At 7:30 p.m. Fleming had a third conversation with defendant, confronting him with the additional facts. Defendant at first conceded that he was at the victim's house at the time of the shooting and admitted taking property. He then admitted he did the shooting.

Defendant, Jamal Dorrough, Bobby Walley, and Eric Watkins were all charged with the murder. No charges were brought against Taylor. Defendant and Walley moved to quash their arrests and suppress their confessions. Those motions were heard on September 7, 1994, and September 26, 1994, with the motions to quash sustained and their confessions suppressed. Thereafter, the State requested an attenuation hearing and the matter was heard on October 20, 1994.

On April 19, 1995, Dorrough filed a motion to quash and suppress evidence. On August 8, 1995, Dorrough's motion to quash was sustained. Again, the State requested an attenuation hearing. The parties stipulated to the testimony given on September 7 and 26, and October 20, 1994, for the purposes of determining whether Dorrough's statement was attenuated.

On September 7, 1995, the trial court found defendant's, Dorrough's, and Walley's confessions attenuated from their illegal arrests. The court found that the statements obtained from Taylor sufficiently attenuated Dorrough's confession. The court next found

Walley's confrontation with the statements of Taylor and Dorrough provided an intervening circumstance so as to purge the taint of his illegal arrest. Similarly, the court found defendant's confrontation with the statements of Taylor, Dorrough, and Walley also provided an intervening circumstance sufficient to purge the taint of his illegal arrest.

After a bench trial, the court found defendant guilty of first degree murder, conspiracy to commit first degree murder, and armed robbery. He was sentenced to consecutive commitment terms of 55 years for murder and 25 years for armed robbery.

On appeal, defendant argues that the trial court erred in finding that his confession was attenuated and in refusing to suppress his confession. This court will not disturb a trial court's decision on a motion to quash and suppress unless that decision is determined to be clearly erroneous. *People v. Foskey*, 136 Ill. 2d 66, 76 (1990). When neither the facts nor the credibility of witnesses is questioned, and the issue is a question of law, this court reviews *de novo*. *Foskey*, 136 Ill. 2d at 76.

The State argues that the trial court erred in concluding that defendant was illegally arrested. Defendant contends the State is precluded from raising this issue at this time because it failed to properly appeal this issue. Even if this issue is properly before this court, we could not reverse the trial court's finding. We see no error in the trial court's determination that the officers lacked probable cause to arrest defendant when they picked him up on the street. See *People v. Williams*, 164 Ill. 2d 1, 11-12 (1994) (setting forth probable cause analysis).

■ The determination that defendant was subjected to an illegal arrest does not resolve the question of whether his confession should have been admitted. *People v. Foskey*, 136 Ill. 2d 66, 85 (1990). A confession obtained after an illegal arrest may be admissible, if the court determines that it was obtained by means sufficiently distinguishable to be purged of the taint of the illegal arrest. *People v. White*, 117 Ill. 2d 194, 222 (1987). The court should consider several factors: (1) the proximity in time between the arrest and the confession; (2) the presence of intervening circumstances; (3) the purpose and flagrancy of the police misconduct; and (4) whether *Miranda* warnings were given. *Foskey*, 136 Ill. 2d at 85-86, citing *Brown v. Illinois*, 422 U.S. 590, 603-04, 45 L. Ed. 2d 416, 427, 95 S. Ct. 2254, 2261-62 (1975). The prosecution bears the burden of demonstrating sufficient attenuation. *Foskey*, 136 Ill. 2d at 86 (finding sufficient attenuation); *White*, 117 Ill. 2d at 222 (finding insufficient attenuation).

■ There is no dispute that appellant was given appropriate *Mi-*

*randa* warnings. *Miranda* warnings alone, however, cannot always make the act sufficiently a product of free will to break the causal connection between the illegality of an arrest and a confession. *People v. Graham*, 214 Ill. App. 3d 798, 813 (1991).

There is no dispute that approximately five hours elapsed between the time of appellant's illegal arrest and the time of his inculpatory statement. The mere passage of time alone, however, is not sufficient to purge the taint of an illegal arrest. *Graham*, 214 Ill. App. 3d at 813.

Although the police conduct here was technically improper, the officers had some evidence suggesting a nexus between the Walley residence and the murder, and nothing would suggest that their conduct was flagrant. However, nothing in this record suggests a reason to validate an otherwise illegal arrest.

The key issue is to examine what, if any, intervening events occurred between the illegal arrest and the statement. *Graham*, 214 Ill. App. 3d at 813; *People v. Turner*, 259 Ill. App. 3d 979, 992 (1994). The trial court found that the statements of Taylor, Dorrough, and Walley implicating defendant in the murder provided a sufficient intervening event so as to attenuate defendant's illegal arrest from his statement. We disagree.

■ "An intervening circumstance is one that dissipates the taint of unconstitutional police conduct by breaking the causal connection between the illegal conduct and the confession." *Turner*, 259 Ill. App. 3d at 993. "The confrontation of an arrestee with new information, untainted by the illegal arrest, has been identified as an intervening circumstance that may produce a voluntary desire to confess and thereby support admission of in-custody statements." *People v. Lekas*, 155 Ill. App. 3d 391, 414 (1987) (recognizing intervening circumstance where defendant is confronted with new information secured apart from illegal arrest); see, *e.g.*, *People v. Gabbard*, 78 Ill. 2d 88, 99 (1979) (finding intervening event where defendant was confronted with sketch of robbery suspect prepared prior to his arrest and acknowledged sketch resembled him); *People v. Bracy*, 152 Ill. App. 3d 566, 572 (1986) (intervening events found where defendant saw his girlfriend at police station and was told she was cooperating, saw his clothes that had been retrieved from her home, and saw proceeds of robbery at police station); *In re R.S.*, 93 Ill. App. 3d 941, 946-47 (1981) (finding intervening event where defendant confronted with evidence gathered independent of defendant's illegal arrest); but see *Taylor v. Alabama*, 457 U.S. 687, 691-92, 73 L. Ed. 2d 314, 320-21, 102 S. Ct. 2664, 2667-68 (1982) (finding no intervening circumstances merely because defendant was given *Miranda* warnings three times, visited

with his girlfriend and male companion before he confessed, and arrest warrant was filed while he was being interrogated).

■ Defendant contends his confession was not purged of the taint of the illegal arrest because it resulted from tainted evidence. The trial court found that the use of Taylor's statement provided a sufficient intervening event. While the court held that defendant, Dorrough, and Walley had been illegally arrested, there was no finding that Taylor had been illegally arrested since Taylor was not charged. Despite the fact that the record suggested that Taylor was taken to the police station in the same manner as the other men, the trial court refused to find that Taylor had been illegally arrested. The court ruled that defendant lacked standing to contest a violation of Taylor's constitutional rights. See *People v. James*, 118 Ill. 2d 214, 226 (1987) (recognizing "fundamental principle that a claim to suppress the product of a fourth amendment violation can be asserted 'only by those whose rights were violated by the search or seizure itself' ").

Defendant argues that the traditional rule for standing does not apply in this case and the statements obtained from the other men may not be used to attenuate his illegal arrest. In *People v. Beamon*, 255 Ill. App. 3d 63, 70 (1993), the court held that "the State's use of evidence obtained as a result of the illegal arrest of [a codefendant] may not serve to attenuate the taint of [another codefendant's] illegal arrest." In *Beamon*, the court found that the standing rule from *James* did not apply because James had not himself been illegally arrested and the issue in *James* was probable cause, not attenuation. *Beamon*, 255 Ill. App. 3d at 70.

In *Beamon*, 255 Ill. App. 3d at 66, the police illegally arrested the codefendant, Moore, at his home a day after a murder occurred. Moore told the police that he had been with Beamon at the time of the murder. When the police illegally arrested Beamon, he told them that on the day of the murder he had remained home ill and he had not seen Moore. After confronting Moore and Beamon with each other's statements, both defendants confessed. The court held that Moore's statement could not "be relied upon as an intervening circumstance [for Beamon's confession] because Moore's conflicting statement was the result of Moore's illegal arrest." 255 Ill. App. 3d at 69-70 (relying on *People v. Avery*, 180 Ill. App. 3d 146 (1989)).

In *People v. Avery*, 180 Ill. App. 3d 146 (1989), Avery, Lewis and Stofer were charged with murder after all three had been illegally arrested. Stofer was picked up first and told police that he had been at a party with Avery and Lewis the night before and the three had driven around afterwards in a car with another man. Lewis was then

picked up and told police that he and Stofer had been at a party and had driven around until 1:30 a.m. An officer confronted Lewis with Stofer's version. Lewis agreed that Avery and another man were with them. The officers then picked up Avery, who told them that Stofer had driven him home at 11:30 p.m. the night before and he retired to bed, after which the officers confronted Avery with Lewis's and Stofer's versions. The officers continued to speak to each of the men several times, eventually securing incriminating statements from each of them. *Avery*, 180 Ill. App. 3d at 150-51.

The appellate court reversed the trial court's finding of attenuation and suppressed Avery's statement. The court rejected the State's argument that an intervening circumstance had occurred when each defendant was confronted with his companion's statements. *Avery*, 180 Ill. App. 3d at 156. "Confronting defendants with statements from each other[,] \*\*\* all of whom were illegally arrested, did not constitute an intervening event which purged the taint of the illegal arrests." *Avery*, 180 Ill. App. 3d at 156. Under this analysis, the statements of Taylor, Dorrough, and Walley did not provide an intervening circumstance so as to purge the taint of defendant's arrest.

The State urges this court to follow two prior decisions in which the courts looked to the acquisition of probable cause to be an intervening factor. In *People v. Lekas*, 155 Ill. App. 3d 391, 414 (1987), the court suggested that the development of probable cause to arrest a defendant who had been illegally arrested could provide a basis for purging the taint of a confession obtained after that point. The court stated "one could question the wisdom of requiring police to go through the formality of releasing [the defendant] only to rearrest him outside the jailhouse door." *Lekas*, 155 Ill. App. 3d at 414. In *People v. Pierson*, 166 Ill. App. 3d 558, 564 (1988), the court relied on such reasoning, calling the intervening acquisition of probable cause an "important factor" in attenuation analysis. The court held that a statement obtained from an individual who was arrested by police without probable cause could provide probable cause to attenuate a statement obtained from another individual who was arrested by police under the same circumstances and subsequently charged with a crime. *Pierson*, 166 Ill. App. 3d at 564. We note, however, that *Beamon*, 255 Ill. App. 3d 63, was decided after these cases and its reasoning followed in *People v. Bates*, 267 Ill. App. 3d 503 (1994).

In *Bates*, 267 Ill. App. 3d at 506-07, the defendant confessed after being confronted with legally obtained evidence and with tainted evidence, including a statement from a codefendant that was later found to have been coerced. The court suppressed Bates' statement because it determined that the State failed to prove that the tainted evidence

was not a factor in Bates' decision to confess. The court reasoned that the use of the evidence obtained from coercing the codefendant could not serve to attenuate the taint of Bates' illegal arrest. *Bates*, 267 Ill. App. 3d at 507, citing *Beamon*, 255 Ill. App. 3d 63. "Statements made by [the codefendant] about defendant's involvement in the crime and evidence recovered as a result of these statements are tainted." *Bates*, 267 Ill. App. 3d at 506.

We note defendant's concern that to allow the State to use illegally obtained evidence to purge the taint of an illegal arrest as done in this case would provide the prosecution with an incentive to conduct illegal arrests and then validly use the fruits of such improper arrests by merely deciding not to charge one individual in the group.

Based on the analysis of *Beamon* and *Bates*, we hold that the trial court erred in finding attenuation. Defendant's confession should have been suppressed as a fruit of the illegal arrest.

We remand this case for a new trial. For the purposes of determining whether the double jeopardy clause bars retrial of a defendant where his conviction has been reversed for evidentiary error, all evidence submitted at the original trial may be considered in determining the sufficiency of the evidence, and retrial is permitted even though the evidence is insufficient to sustain a verdict once erroneously admitted evidence has been discounted. *People v. Olivera*, 164 Ill. 2d 382, 393 (1995). Upon review of the record, including defendant's confession, we hold that there was sufficient evidence for the trier of fact to conclude that defendant was guilty beyond a reasonable doubt.

For the foregoing reasons, we reverse defendant's convictions and remand for a new trial in which defendant's confession shall be suppressed. In light of this outcome, we need not address the sentencing issue.

Reversed and remanded.

THEIS, J., concurs.

JUSTICE QUINN, specially concurring:
I concur in the holding of the case but write to express a concern with the holding in a case this opinion heavily relies upon. As noted, in *People v. Beamon*, 255 Ill. App. 3d 63 (1993) the court held that, "the State's use of evidence obtained as a result of the illegal arrest of [a codefendant] may not serve to attenuate the taint of [another codefendant's] illegal arrest." The court in *Beamon* further held,

"[w]e recognize that in *People v. James* (1987), 118 Ill. 2d 214, 514 N.E.2d 998, the supreme court held that a defendant lacked standing to claim that his confession is the product of the illegal arrest of another; but the defendant in *James* had himself not been illegally arrested. The issue in *James* was probable cause, not attenuation." *People v. Beamon*, 255 Ill. App. 3d at 70.

It is difficult to understand why probable cause to arrest a defendant may be based on the statement of an illegally arrested codefendant (as in *James*) but that this same statement cannot be used as attenuation.

In the instant case, the police did not confront defendant with any further witnesses or evidence obtained as a result of defendant's illegal arrest. This fact pattern is similar to that in *People v. Lekas*, 155 Ill. App. 3d 391 (1987). In *Lekas*, three brothers (George, Phillip and Christopher) were arrested and charged with armed robbery and murder. George was arrested first and he told police that his brothers had owed the murder victim's son money and that at some time in the past they had talked about stealing a coin collection from the victim's home. A coin collection had been taken from the victim's home at the time the murder was committed. Six hours after receiving this information from George, the police arrested Phillip and Christopher in their homes without obtaining arrest warrants for them. After Phillip and Christopher were arrested, the police located a witness who had been identified by George. Christopher confessed after his arrest. Phillip confessed after being in custody for 12 hours and after being confronted with George's statement, Christopher's statement, and the existence of the witness.

The trial court suppressed George's statements as being the product of improper police promises. The trial court held there was probable cause for the arrest of Phillip and Christopher.

On appeal, the appellate court held that even if Phillip's arrest should have been quashed, his confession was attenuated due to the intervening cause of attainment of probable cause. The appellate court held that since George's statement, Christopher's statement, and the existence of the witness were not the fruits of Phillip's arrest, Phillip's subsequent confession was not tainted. *People v. Lekas*, 155 Ill. App. 3d at 414.

Under *Lekas*, I believe that the defendant's confession would be attenuated. I also believe that the holding in *Beamon* conflicts with the holding in *James.*

The court in *Beamon* did not cite *Lekas* or distinguish it. Likewise, the *Beamon* opinion did not cite or distinguish *People v. Pierson*, 166 Ill. App. 3d 558 (1988). The status of Kevin Taylor in the

instant case is very similar to that of Alfie Jones in the *Pierson* case. Jones was picked up by the police without probable cause and gave a statement implicating Pierson but not implicating himself. The appellate court in *Pierson* held that under these circumstances, the statements of James provided probable cause as to the unlawfully arrested defendant. This probable cause is an intervening circumstance which was a significant factor to be considered when determining whether there is attenuation. *People v. Pierson*, 166 Ill. App. 3d at 564.

The defense urges this court to overrule *Pierson*, asserting that its holding provides the prosecution with an incentive to conduct illegal arrests and then validly use the fruits of such improper arrests by merely deciding not to charge one individual in the group. This is not a valid concern based on the facts of the instant case. There is no evidence that Kevin Taylor was involved in any way with the murder of Rufus Simpson. Therefore there was no evidence that the State chose not to charge Taylor so it could use his statements to supply the probable cause to arrest Dorrough, Walley and defendant.

Indeed, had defendant confessed after being confronted only with Taylor's statements, I believe defendant's confession would have been attenuated. However, defendant was also confronted with Dorrough's and Walley's confessions prior to confessing himself. Under *Beamon*, Dorrough's and Walley's confessions were tainted. When a defendant is confronted with legally obtained evidence (such as Taylor's statements) and with tainted evidence (such as Dorrough's and Walley's confessions), it is the State's burden to prove that the tainted evidence was not a factor in his decision to confess. *People v. Bates*, 267 Ill. App. 3d 503, 506 (1994), citing *People v. Turner*, 259 Ill. App. 3d 979 (1994). The State has not met this burden in this case.

I believe that I am compelled to follow the holding in *Beamon* and therefore I concur in the result of this case. However, I believe that the holding in *Beamon* conflicts with the holdings in *Lekas* and *James* and these conflicts should be resolved.