809 N.E.2d 745 (2004)
348 Ill. App.3d 82
284 Ill.Dec. 179
The PEOPLE of the State of Illinois, Plaintiff-Appellee,
v.
Reginald WILBERTON, Defendant-Appellant.
No. 1-03-0093.
Appellate Court of Illinois, First District, Second Division.
April 20, 2004.
Rehearing Denied May 3, 2004.
*747 Michael J. Pelletier, Deputy Defender, and Stephen L. Gentry, Assistant Appellate Defender, Office of the State Appellate Defender, Chicago, for Appellant.
Richard A. Devine, State's Attorney of Cook County, Chicago (Renee Goldfarb, Michelle Katz, and Hareena Meghani-Wakely, of counsel), for Appellee.
Presiding Justice WOLFSON delivered the opinion of the court:
The single issue before us is whether the defendant's confessions to murder were independent of the taint of his illegal arrest.
This case is before us for the second time. Following a jury trial, defendant Reginald Wilberton was found guilty of first degree murder, attempted first degree murder, and aggravated discharge of a firearm. The trial court sentenced defendant to 35 years' imprisonment for first degree murder and a concurrent 30-year term for attempted murder.
In the first appeal, this court rejected all of defendant's contentions but one: we vacated defendant's conviction after finding the police lacked probable cause to arrest him. People v. Wilberton, No. 1-01-1481 (2002) (unpublished order pursuant to Supreme Court Rule 23). We remanded the cause to the circuit court for a determination of whether defendant's inculpatory statements were sufficiently attenuated from the illegal arrest. After a hearing, the trial judge found sufficient *748 attenuation and reinstated defendant's conviction. Defendant now appeals the trial court's order, contending his statements were not attenuated from his arrest.
We affirm.

FACTS
At the attenuation hearing, Chicago police sergeant John Pallohusky testified he arrested defendant at 12:30 a.m. on August 11, 1998, for his suspected involvement in the murder of Larion Jackson and attempted murder of Chris Jackson. At the time, police knew a man nicknamed "Bird" was involved in the shooting. Derrold Davis, who was another suspect already in custody for questioning in another case, told police that Reginald Wilberton was known as "Bird" and gave them defendant's address. Sergeant Pallohusky did not interview defendant after his arrest.
Detective James Gilger interviewed Davis at 6 p.m. on August 11, 1998. After being advised of the Miranda warnings, Davis told Detective Gilger that he drove defendant and two other men to a house on Laramie Street. They went there to shoot rival gang members. Defendant had a shotgun and the other men had a .357 revolver and a .45 caliber handgun. Defendant said he would shoot first. Defendant and the two men got out of the car and fired shots at people sitting on the front porch of the house. Gilger testified that Davis' statement was corroborated by physical evidence collected at the crime scene, where Gilger found an empty shotgun shell casing and wadding from the shell. He also found several shell casings consistent with a .45 caliber gun.
Detective Gilger interviewed defendant at 9 p.m. on August 11, 1998. After advising defendant of his Miranda rights, Detective Gilger told defendant Davis had implicated him in the shooting of Larion Jackson, that Davis said defendant used a shotgun. Defendant denied any involvement and agreed to take a polygraph examination the next morning.
Detective Gilger interviewed defendant again at 6 p.m. on August 12, 1998, about 42 hours after defendant's arrest. After reading defendant the Miranda warnings, Detective Gilger again told defendant Davis had given a statement and that Davis was charged with shooting Larion Jackson. Defendant then made a statement implicating himself in the shooting; he later repeated his statement for the assistant State's Attorney and a court-reporter. These were not the first inculpatory statements made by defendant
The parties stipulated to the trial testimony of Kevin Howley. At trial, Howley testified he administered a polygraph examination to defendant at noon on August 12, 1998, after advising defendant of his Miranda rights. After the test, Howley told defendant that the test results indicated deception. Defendant then gave an inculpatory statement to Howley, admitting he rode with three other individuals to Laramie Street. There, defendant took a shotgun and fired two shots into the gangway of the building. He returned to the car and fled the scene with the three other men.
Detective Kenneth Berris testified he escorted defendant to the polygraph examination. After the examination, Detective Berris read defendant the Miranda warnings, and defendant indicated he understood his rights. Defendant then gave an inculpatory statement to Berris.
Assistant State's Attorney Karen Kerbis testified she spoke with defendant at 11:15 p.m. on August 12, 1998, about 47 hours after his arrest. She advised defendant of his Miranda rights, and defendant indicated he understood his rights. Defendant made an inculpatory statement to Kerbis and agreed to allow a court reporter to *749 record his statement. In his court-reported statement, dated August 13, 1998, at 12:44 a.m., defendant admitted firing a shotgun twice toward the porch of a house on Laramie Street. He also made statements regarding the other participants and the guns they used. Defendant said the police gave him food and drink, allowed him to use the bathroom, allowed him to rest, and treated him "fine". Defendant's statement as recorded by the court reporter was admitted into evidence at trial.
The trial court found Davis' statement to police implicating defendant in the shooting and the polygraph examination were intervening circumstances. Those circumstances, together with the presence of Miranda warnings and lack of police misconduct, sufficiently attenuated defendant's statement from the illegal arrest. The trial court reinstated defendant's conviction and sentence.

DECISION

I. Standard of review
The parties do not contest the facts or credibility of the witnesses. When neither the facts nor witness credibility are disputed, we review the trial court's attenuation determination de novo. People v. Berry, 314 Ill.App.3d 1, 15-16, 247 Ill.Dec. 80, 731 N.E.2d 853 (2000), citing People v. Foskey, 136 Ill.2d 66, 76, 143 Ill.Dec. 257, 554 N.E.2d 192 (1990).

II. Attenuation
Defendant contends his court-reported statement should have been suppressed because it followed an illegal arrest. "The fact of an illegal arrest, standing alone, does not make a subsequent confession inadmissible." People v. Wright, 294 Ill.App.3d 606, 612, 229 Ill. Dec. 158, 691 N.E.2d 94 (1998). Instead, it becomes the burden of the prosecution to show by clear and convincing evidence that the confession was "`a product of the defendant's free will, independent of any taint of the illegal arrest.'" Wright, 294 Ill.App.3d at 612, 229 Ill.Dec. 158, 691 N.E.2d 94, quoting People v. Pierson, 166 Ill.App.3d 558, 563, 117 Ill.Dec. 18, 519 N.E.2d 1185 (1988).
Courts use four factors to determine whether a confession is purged of the taint of illegality: (1) whether the confessor received Miranda warnings; (2) the temporal proximity of the arrest and the confession; (3) the presence of intervening circumstances; and (4) the purpose and flagrancy of the police misconduct. People v. Willis, 344 Ill.App.3d 868, 884, 279 Ill. Dec. 755, 801 N.E.2d 47 (2003), pet. for leave to appeal granted, No. 97454, 207 Ill.2d 627, 283 Ill.Dec. 140, 807 N.E.2d 981 (January 28, 2004); Brown v. Illinois, 422 U.S. 590, 603-04, 95 S.Ct. 2254, 2261-62, 45 L.Ed.2d 416, 427 (1975). The last two factors, intervening circumstances and police misconduct, are considered key factors in attenuation analysis. Willis, 344 Ill. App.3d at 884-85, 279 Ill.Dec. 755, 801 N.E.2d 47.

A. Presence of Miranda warnings
Although police cannot dissipate the taint of an illegal arrest simply by giving Miranda warnings, the presence of the warnings prior to interrogation carries some weight. Wright, 294 Ill.App.3d at 614, 229 Ill.Dec. 158, 691 N.E.2d 94. Here, it is undisputed that all questioners advised defendant of his Miranda rights before statements were made. Six times defendant waived his rights and agreed to give a statement. This factor weighs in favor of attenuation.

B. Temporal proximity of arrest and statement
Next, we consider the length of time between the illegal arrest and defendant's *750 inculpatory statement. In this case, defendant gave his first inculpatory statement to the polygraph examiner 36 hours after his arrest. His second inculpatory statement was made to a detective, shortly after the statement to the polygraph examiner. He agreed to give a court-reported statement 48 hours after his arrest.
A lapse of time may dissipate the taint of an illegal arrest by allowing the accused to reflect on his situation. People v. Ollie, 333 Ill.App.3d 971, 985, 267 Ill. Dec. 726, 777 N.E.2d 529 (2002). Here, defendant was not incessantly Interrogated, giving him plenty of time to ponder not only his situation, but also Davis' statement against him. Nonetheless, this factor is ambiguous and its significance depends on the facts of each case, particularly if there are additional indicia of coercion. Willis, 344 Ill.App.3d at 886, 279 Ill.Dec. 755, 801 N.E.2d 47; Ollie, 333 Ill.App.3d at 985, 267 Ill.Dec. 726, 777 N.E.2d 529 (a significant lapse of time enhances the coercive nature of a custodial setting). It follows, then, our focus must be on the two remaining factorsintervening circumstances and police misconduct.

C. Intervening circumstances
"`An intervening circumstance is one that dissipates the taint of unconstitutional police conduct by breaking the causal connection between the illegal conduct and the confession.'" People v. Austin, 293 Ill.App.3d 784, 788, 228 Ill.Dec. 42, 688 N.E.2d 740 (1997). Intervening circumstances support attenuation when they are capable of inducing a voluntary desire to confess. Austin, 293 Ill.App.3d at 788, 228 Ill.Dec. 42, 688 N.E.2d 740. Illinois courts have found confronting a suspect with new information, such as a co-conspirator's statement, is an intervening circumstance which purges the primary taint of illegality, so long as the statement was legally obtained. Wright, 294 Ill.App.3d at 613, 229 Ill.Dec. 158, 691 N.E.2d 94; Foskey, 136 Ill.2d at 87, 143 Ill.Dec. 257, 554 N.E.2d 192; Berry, 314 Ill.App.3d at 16-17, 247 Ill.Dec. 80, 731 N.E.2d 853.
In this case, the trial court found two intervening circumstances: (1) Davis' statement implicating defendant in the shooting, and (2) the polygraph examination. The State contends the trial court's attenuation determination was correct because Davis' statement served as an intervening circumstance in two ways. First, the statement purged the taint of defendant's illegal arrest by providing police with the probable cause they previously lacked. Second, when police confronted defendant with Davis' statement, it sparked a voluntary desire to confess.
Defendant contends intervening probable cause is not sufficient grounds for attenuation (see People v. Ornelas, 295 Ill. App.3d 1037, 1046, 230 Ill.Dec. 496, 693 N.E.2d 1247 (1998)). Defendant points to the delay between the time he was told Davis named him as the shooter, around 9 p.m. on August 11, 1998, and the time he made his first inculpatory statement, around noon on August 12. That delay, he contends, demonstrates that Davis' statement did not produce a voluntary desire to confess. Defendant contends his first inculpatory statement was the result of learning the results of his polygraph examination, which is not an intervening circumstance. See People v. Franklin, 115 Ill.2d 328, 334, 105 Ill.Dec. 211, 504 N.E.2d 80 (1987) (a polygraph examination is equivalent to interrogation and does not alone purge the taint of an illegal arrest).
First, we consider whether intervening probable cause purges the taint of an illegal arrest. Intervening acquisition of probable cause is "an important factor in the attenuation analysis," even *751 though it does not always assure the police did not exploit a Fourth Amendment violation. People v. Morris, 209 Ill.2d 137 at 157-58, 282 Ill.Dec. 753, 807 N.E.2d 377 (2004); Pierson, 166 Ill.App.3d at 564, 117 Ill.Dec. 18, 519 N.E.2d 1185, citing United States v. Cherry, 759 F.2d 1196, 1212 (5th Cir.1985). "[T]he development of independent probable cause weighs heavily in favor of finding that the taint of defendant's illegal arrest had been purged prior to the time he gave his statements to the police." Morris, 209 Ill.2d at 159-61, 282 Ill.Dec. 753, 807 N.E.2d 377. Illinois courts repeatedly have found intervening probable cause supports attenuation. Morris, 209 Ill.2d at 159-61-, 282 Ill.Dec. 753, 807 N.E.2d 377; Wright, 294 Ill.App.3d at 613, 229 Ill.Dec. 158, 691 N.E.2d 94; Pierson, 166 Ill.App.3d at 564, 117 Ill.Dec. 18, 519 N.E.2d 1185.
"[I]t would place an unreasonable burden on police to release an illegally arrested defendant and then, based on probable cause obtained after an illegal arrest, arrest him again when he reached the sidewalk." Morris, 807 Ill.2d at 158-61, 282 Ill.Dec. 753, 807 N.E.2d 377.
In Pierson, the defendant was detained without probable cause. Before the defendant was questioned, an informant named Jones told police he witnessed the defendant commit the shooting. Defendant told Jones earlier he intended to rob a store, and Jones witnessed the event from across the street. Jones described the gun used by the defendant and how the shooting occurred. As the defendant fled the scene, he ran past Jones and removed a brown ski mask that Jones had given him. Later, defendant showed Jones four expended bullet casings from the gun he used. The details of Jones' statement were corroborated by other information the police had collected, including another eyewitness account that the shooter wore a ski mask. Pierson, 166 Ill.App.3d at 559-60, 117 Ill. Dec. 18, 519 N.E.2d 1185.
This court found Jones' statement provided sufficient probable cause for the defendant's arrest because his detailed eyewitness account was corroborated by other evidence. Pierson, 166 Ill.App.3d at 563, 117 Ill.Dec. 18, 519 N.E.2d 1185. The defendant was advised of his Miranda rights and this court found no flagrant police misconduct. Pierson, 166 Ill.App.3d at 563, 117 Ill.Dec. 18, 519 N.E.2d 1185. Even though the defendant's inculpatory statement came only two hours after his illegal arrest, this court held the statement was sufficiently attenuated by the intervening probable cause. Pierson, 166 Ill. App.3d at 564, 117 Ill.Dec. 18, 519 N.E.2d 1185.
In Wright, 294 Ill.App.3d 606, 229 Ill. Dec. 158, 691 N.E.2d 94, the defendant's brother implicated the defendant in two killings before police questioned the defendant, who had been detained without probable cause. The defendant did not challenge the legality of his brother's arrest on an outstanding warrant. Wright, 294 Ill. App.3d at 613, 229 Ill.Dec. 158, 691 N.E.2d 94. Within 14 hours of his arrest, the defendant waived his Miranda rights six times and gave six different statements. After finding no flagrant police misconduct, this court found the intervening probable cause derived from the brother's statement and the confrontation of the defendant with that statement were both intervening events that purged any taint of illegality. Wright, 294 Ill.App.3d at 613-14, 229 Ill.Dec. 158, 691 N.E.2d 94; see also Berry, 314 Ill.App.3d at 15-17, 247 Ill.Dec. 80, 731 N.E.2d 853 (codefendant's incriminating statement provided probable cause to further detain the defendant in custody; confronting the defendant with *752 the statement served as an intervening circumstance for attenuation).
As in Pierson and Wright, Davis' statement gave police an intervening source of probable cause. A codefendant's incriminating statement will establish probable cause and serve as an intervening circumstance, so long as the statement is reliable and legally obtained. See People v. Thomas, 186 Ill. App.3d 782, 795, 134 Ill.Dec. 535, 542 N.E.2d 881 (1989); Austin, 293 Ill. App.3d at 790, 228 Ill.Dec. 42, 688 N.E.2d 740.
In this case, Davis' statement meets both of these criteria. The statement was reliable because he took part in the crime and the details of his statement were independently corroborated by physical evidence already collected by police. Specifically, his description of the weapons used in the crime was supported by the bullet casings found at the scene, With this information, police had probable cause to detain defendant before he made his first statement. At that point, the police were able to question defendant without exploiting the illegality of the arrest. Probable cause arose independently of defendant's arrest, weighing heavily in favor of attenuation. Cf. Morris, 209 Ill.2d at 159-61, 282 Ill.Dec. 753, 807 N.E.2d 377.
Second, defendant does not challenge the legality of Davis' arrest. Based on the record, we know Davis was originally apprehended for questioning in another case. Absent any evidence showing otherwise, we conclude Davis' statement was obtained legally.
We are not persuaded by defendant's contention he was compelled to confess only by learning his polygraph examination results. While confronting a suspect with polygraph results is not an intervening circumstance by itself (Franklin, 115 Ill.2d at 334, 105 Ill.Dec. 211, 504 N.E.2d 80), this case involves other intervening events. We are not required to consider each event in isolation. Although defendant initially denied involvement, we believe confronting defendant with Davis' statement and, later, the results of the polygraph test likely had a cumulative effect, leading defendant to confess five times. See generally People v. Matthews, 205 Ill.App.3d 371, 407-08, 150 Ill.Dec. 310, 562 N.E.2d 1113 (1990) (finding sufficient attenuation where the defendant was given long periods of time alone to reflect on the investigation, the statements given by other witnesses which contradicted his own, and his failed polygraph examination). We believe Davis' statement gave police probable cause to arrest defendant, thus purging the primary taint of illegality before defendant made his inculpatory statement. Additionally, confronting defendant with Davis' statement was an intervening circumstance capable of inducing a voluntary, although not immediate, desire to confess.

D. Purpose and flagrancy of police misconduct
Finally, we consider the purpose and flagrancy of any police misconduct.
"[A]ttenuation is less likely to be found where the police misconduct in bringing about the illegal arrest is flagrant. Police action is flagrant where the investigation was carried out in such a manner to cause surprise, fear, and confusion, or where it otherwise has a `quality of purposefulness,' i.e., where the police embark upon a course of illegal conduct in hope that some incriminating evidence (such as the very statement obtained) might be found." People v. Jennings, 296 Ill.App.3d 761, 765, 231 Ill.Dec. 184, 695 N.E.2d 1303 (1998), citing *753 Foskey, 136 Ill.2d at 86, 143 Ill.Dec. 257, 554 N.E.2d 192.
In this case, we find no evidence of flagrant police misconduct. The police did not mistreat defendant during his detention and provided food, drink, and the opportunity to sleep. Moreover, defendant was not relentlessly interrogated after his arrest.
Although their conduct fell just short of probable cause when they arrested defendant, the police officers did not exploit the illegality when obtaining defendant's statement. Before defendant gave his first inculpatory statement to police, Davis' incriminating statement, which was corroborated by previously collected physical evidence, gave police probable cause to detain defendant and attempt to illicit a confession. Defendant never challenged the legality of Davis' arrest, so there is nothing before us to suggest Davis' statement was the product of police misconduct. Compare Wright, 294 Ill.App.3d at 613, 229 Ill.Dec. 158, 691 N.E.2d 94 (confronting a defendant with a reliable and legally-obtained statement incriminating him is an intervening circumstance), with People v. Beamon, 255 Ill.App.3d 63, 70, 194 Ill.Dec. 200, 627 N.E.2d 316 (1993) ("the State's use of evidence obtained as a result of the illegal arrest of [a codefendant] may not serve to attenuate the taint of [another codefendant's] illegal arrest").
Finding no purposeful or flagrant misconduct, we believe the deterrent purpose of the exclusionary rule would not be served by excluding defendant's statements. See Ornelas, 295 Ill.App.3d at 1047, 230 Ill.Dec. 496, 693 N.E.2d 1247; Willis, 344 Ill.App.3d at 878, 279 Ill.Dec. 755, 801 N.E.2d 47 ("[t]he exclusionary rule is a judicially-created remedy which serves to deter law enforcement officials from violating the [Fourth Amendment] in the future").

CONCLUSION
We believe Davis' statement to police was an intervening circumstance that, in light of the other attenuation factors, sufficiently purged the taint of defendant's illegal arrest before he gave his court-reported statement. Accordingly, we affirm the judgment of the circuit court.
Affirmed.
CAHILL, and GARCIA, JJ., concur.